United States Court of Appeals,

Fifth Circuit.

No. 93-1890.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Empire Savings and Loan Association, Plaintiff-Appellee,

v.

Nora P. LeGRAND, et al., Defendants,

Andrew M. Roughton, Defendant-Appellant.

Jan. 26, 1995.

Appeal from United States District Court for the Northern District of Texas.

Before GARWOOD, JOLLY and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This case involves an appeal from an order of contempt resulting from Andrew Roughton's failure to comply with a postjudgment discovery order compelling the production of his federal income tax returns. We affirm the civil portion of the contempt order and vacate the criminal portion of the order.

*Background*

On July 18, 1991, the Federal Deposit Insurance Corporation (FDIC) obtained a final judgment against defendants LeGrand and Roughton in the amount of $846,879.59, plus $1,085,444.30 in interest, plus $8,585.59 in attorney's fees. The judgment was later amended on September 6, 1991, to provide for an additional $81,589.92 in interest the FDIC had left out of the original judgment. When post-judgment discovery disputes arose over the production of Roughton's federal income tax returns for the years

1

1989, 1990, and 1991, Roughton filed a motion for protective order, seeking *in camera* review of his federal income tax returns and a ruling that FDIC not be permitted to obtain copies of the returns or to inquire into their contents. Alternatively, Roughton sought a confidentiality order prohibiting FDIC from disseminating the returns or any information therein to third persons except as required for the collection of the judgment against Roughton. The FDIC also filed a motion to compel production of the returns. The matter was referred to the federal magistrate. The magistrate issued an order compelling disclosure of Roughton's income tax returns to counsel for FDIC within ten days.[1] Each party applied to the district judge for relief from this order; both parties' motions were denied on March 22, 1993.

On May 28, 1993, the FDIC filed its Motion for Contempt. The matter was referred to the magistrate by the district judge. Roughton objected to the reference, claiming that the magistrate was without authority to conduct a hearing on the motion for contempt because such power is not vested in a magistrate under the

---

[1]The magistrate ruled that only the returns filed by Roughton individually or jointly with his spouse Priscilla Roughton were to be produced. Roughton's primary objection to producing the returns was that they contained information relating to his wife's separate income or property. The magistrate addressed this concern in his order, noting that Priscilla Roughton's separate returns, if any, would not have to be produced. Additionally, the magistrate issued a confidentiality order providing that, for any returns Roughton filed jointly with his wife, disclosure of the contents of the jointly-filed returns was to be limited to FDIC and its counsel and experts.

2

Federal Magistrates Act.[2]  The magistrate conducted a hearing on May 28, 1993, and issued a Report and Recommendation[3] in which he made numerous findings of fact, including generally that Roughton had been ordered to produce the tax returns, but that he had not done so, nor had he proffered the returns to the magistrate or offered any evidence demonstrating his inability to comply with the order, despite threats by FDIC that it would file a motion for contempt if the returns were not produced.  The magistrate's recommendation stated as follows:

> It is recommended that the District Court enter its order directing Defendant Andrew M. Roughton to appear forthwith before the District Court to show cause why he should not be held in *civil contempt* for his failure to comply with the order of the magistrate judge filed on February 24, 1993, and in the event that Defendant fails to show cause for his failure to comply or to produce at the hearing the subject tax returns that the District Court hold him in *civil contempt* and order that he be confined in a jail-type institution until he purge [sic] himself of his contempt by producing his federal tax returns, previously ordered, and by tendering the sum of $909.00 to the FDIC.  (Emphasis added.)

Roughton timely objected to the Report, reasserting his objections to the magistrate's authority to make the factual findings and also alleging a defect in the reference procedure.

---

[2]28 U.S.C. § 636.

[3]Although the order of reference purported to refer the motion for contempt to the magistrate judge for determination, the magistrate concluded that he lacked contempt powers and instead was limited to making a report and recommendation on the contempt motion.  Roughton contends that because the order of reference was one referring the contempt motion to the magistrate for *determination,* the magistrate lacked proper authority to issue only a report and recommendation.  We disagree, finding that the order of reference properly gave the magistrate authority to issue a report and recommendation on the contempt motion.

3

Roughton also alleged there was no testimony adduced at the hearing to support the factual findings made by the magistrate.

On October 4, 1993, a show cause hearing was held before the district judge. Counsel for FDIC stated in open court that Roughton had not produced the returns to him as required by the order. Counsel for Roughton did not object to FDIC's counsel's comments regarding Roughton's noncompliance with the order. The district court adopted the recommendation of the magistrate judge and held Roughton in contempt. Accordingly, Roughton was immediately taken into custody by the United States Marshal. The order issued by the district judge stated that:

> Defendant did not show just cause for his failure to comply with the February 24, 1993 order directing him to produce to the FDIC tax returns for the years 1989, 1990, and 1991. Accordingly, the Court found Defendant in contempt and ordered that he be taken into custody for a period of 72 hours *and* until he produces the subject tax returns and pays attorneys' fees in the amount of $909.00. (Emphasis added.)

Notwithstanding the literal wording of the order requiring that Roughton be taken into custody for 72 hours *and* until he produced the tax returns, Roughton was released from custody immediately upon producing the returns and paying $909.00 to the FDIC on the day of the hearing.

On appeal, Roughton alleges that the above order was one of criminal contempt, and that he was found guilty without the requisite protections which must be afforded to one in jeopardy of a criminal sanction, including proper notice and the appointment of an independent prosecutor. Roughton also alleges that no testimony or other evidence was requested or received at either of the

4

hearings on the Motion for Contempt. Thus, even if the order was one of civil contempt, Roughton alleges it is not supported by the record. Roughton also alleges that the magistrate was without authority to conduct the hearing on the motion for contempt.

We conclude that the district judge's order contained both a civil element and a criminal element, but that the order was executed as though it were entirely civil. We vacate the criminal element of the contempt order and affirm the civil element.

## *Standard of Review*

We review a contempt order for abuse of discretion, and we review the district court's underlying factual findings under the clearly erroneous standard. *Martin v. Trinity Industries, Inc.,* 959 F.2d 45, 46-47 (5th Cir.1992).

## *Analysis*

*Magistrate's Authority under 28 U.S.C. § 636 to enter a postjudgment discovery order and submit a report and recommendation concerning a contempt determination*

As noted above, Roughton questions the sufficiency of the district court's referrals to the magistrate and the statutory and constitutional bases for the magistrate's authority. We conclude that the district court properly referred the motions relating to postjudgment discovery of the tax returns for determination. We also conclude that the district court properly referred the motion for contempt to the magistrate, who issued a postjudgment discovery order and a report/recommendation on Roughton's contempt in accordance with 28 U.S.C. § 636(b)(3).

5

The Federal Magistrates Act was passed to assist the judiciary in its overload by permitting the assignment of various judicial duties to magistrates. Several specific duties that may be assigned to magistrates are outlined in the statute. To encourage experimentation with delegations to magistrates, Congress allowed district courts to assign magistrates "such additional duties as are not inconsistent with the Constitution and laws of the United States". 28 U.S.C. § 636(b)(3).

In this case, the district court referred Roughton's motion for protective order and the FDIC's motion to compel to the Magistrate for hearing and determination pursuant to 28 U.S.C. § 636(b) and Local Rule 1.3 of the Northern District Court of Texas. Section 636(b) provides for the referral of various matters without the parties' consent. The District Court's Local Rule incorporates an order of that court, which delineates *additional* powers and duties of Magistrates under § 636(b).[4]

This statutory provision and local rule provide a jurisdictional basis for the magistrate's entry of a postjudgment discovery order. *See, Merritt v. Int'l Bhd. of Boilermakers,* 649 F.2d 1013, 1018 (5th Cir.1981).

Roughton challenges Section 636(b)(3) as a basis for the magistrate's jurisdiction, claiming that the grant of authority in

_____

[4]Miscellaneous Order No. 6, Rule 2(f) of that court provides that upon entry of an order of reference by a district judge, or when required to do so under the provisions of a local rule or general order of this Court, a magistrate may perform "[a]ny other duties assigned by the Court, or any Judge thereof, which are not inconsistent with the Constitution and laws of the United States."

(b)(3) cannot exceed specific jurisdictional grants in other provisions of 28 U.S.C. § 636. Because no other provision of § 636 expressly authorizes a federal magistrate to issue postjudgment discovery orders or to conduct a hearing and issue a report and recommendation on a contempt motion in a discovery dispute, Roughton contends that the magistrate acted without authority. He relies upon *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), *Stockler v. Garratt,* 974 F.2d 730 (6th Cir.1992) and *Olympia Hotels Corp. v. Johnson Wax,* 908 F.2d 1363 (7th Cir.1990). These cases examine a magistrate's authorization to conduct *voir dire.* Given the critical nature of *voir dire* and its potentiality for affecting the outcome of a trial, these cases should have little relevance to determining the applicability of 28 U.S.C. § 636(b)(3) in this case, where the issue is whether the magistrate can conduct a nondispositive postjudgment discovery motion in a collection proceeding, as FDIC correctly points out.

The legislative history of § 636 also illustrates that Congress placed the "additional duties" clause in a separate subsection of § 636 to emphasize that it was not tightly restricted by other statutory grants of authority. H.R.Rep. No. 94-1609, 94th Cong., 2d Sess. 12 (1976), U.S.Code Cong. & Admin.News 1976, 6162. *Gomez, supra,* provided only that these additional duties reasonably relate to the existing statutory scheme. Given the fact that the discovery motions in this case are the types of nondispositive discovery motions specifically authorized for pretrial determination by a magistrate under § 636(b)(1)(A), jurisdiction to

7

decide these types of motions *postjudgment* bears a reasonable relationship to the existing statutory scheme and should be found under § 636(b)(3).

Roughton argues that the Magistrate was not authorized to enter a final decision without the consent of the parties, citing *Jaliwala v. United States,* 945 F.2d 221 (7th Cir.1991) and *Parks by and through Parks v. Collins,* 761 F.2d 1101 (5th Cir.1985). As FDIC points out, the *Jaliwala* case is inapposite because the judgment in that case was an appealable, final judgment, whereas in this case the magistrate's order as well as his report and recommendation related to a nondispositive postjudgment discovery motion which was reviewed by the district judge.

The *Parks* case involved a magistrate's determination on a Rule 60(b) motion to set aside a default judgment issued by the district court. We declined to consider the application of § 636(b)(3) as a source for the magistrate's jurisdiction in *Parks* because we found that the district court never referred the motion to the magistrate, nor had the parties consented to have the motion heard by a magistrate. In the instant case, we have determined that both the motion to compel/motion for protective order and the motion to compel were properly referred to the magistrate. Thus, Roughton's reliance on *Parks* is misplaced.

Roughton also challenges the constitutional basis for the magistrate's authority to issue postjudgment discovery orders, citing *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 57-63, 102 S.Ct. 2858, 2864-67, 73 L.Ed.2d 598 (1982).

8

This and all other arguments forwarded by Roughton and pertaining to the authority of the magistrate in this case are meritless. We find that the matters involved herein were properly referred to the magistrate, who had the requisite constitutional and statutory authority pursuant to § 636(b)(3) to order the production of the returns and to issue a report and recommendation on the motion for contempt.

*Civil or Criminal Contempt?*

Having determined that the magistrate had the authority to issue the Report and Recommendation in this case, the next issue is whether the district court's order that Roughton be taken into custody for a period of 72 hours *and* until he produced his tax returns to the FDIC and paid to the FDIC attorneys' fees in the amount of $909.00 amounts to civil or criminal contempt. Roughton argues that the order was one of criminal contempt. FDIC argues that the contempt order provided only civil relief.

A contempt order is characterized as either civil or criminal depending on its primary purpose. *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir.1990). If the primary purpose is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the primary purpose of the sanction is to coerce another party for the contemnor's violation, the order is considered purely civil. A key determinant is whether the penalty imposed is absolute or conditional on the contemnor's conduct. When a contempt order contains both a punitive and a coercive dimension, for purposes of appellate review it will be

9

classified as a criminal contempt order. *Lamar,* 918 F.2d at 566-67.

The face of the order in this case does not indicate whether it is civil or criminal in nature. However, the order contains both a punitive element (the initial 72 hour imprisonment) and coercive elements (the $909.00 attorney's fee award to FDIC and the order that Roughton remain in custody until he produced the returns). A civil contemnor remains imprisoned *only* until he complies with an order or condition imposed by the court. In this case, the 72 hour imprisonment imposed by the court reads as an absolute punishment that would have to be served even if Roughton immediately handed over the returns and paid the attorney's fees. Thus, this portion of the order is punitive in nature. The District Judge's order stated that Roughton was to serve 72 hours *and* thereafter until he produced the returns and paid the money. Thus, the face of the contempt order reflects both a punitive and a coercive dimension and should be classified as a criminal contempt order, notwithstanding the fact that the magistrate's Report and Recommendation recommended that Roughton be held in *civil* contempt. However, we find that the order was executed as though it were civil.

In order for a notice of show cause hearing to be sufficient for a hearing at which criminal contempt may be found, either the offending conduct forming the basis for the hearing must be such that it can only be punished by punitive or criminal sanctions, or it must specifically state that the hearing will be a criminal

contempt proceeding. *American Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523, 530-531 (5th Cir.1992). Roughton argues that the conduct described in the district court's order to show cause, i.e., failure to produce tax returns, could have been punished with purely coercive sanctions, of which Roughton might have been able to purge himself through compliance. We agree. For example, the contempt order could have provided for Roughton to be taken into custody only until he complied with the magistrate's order, with no absolute 72 hour imprisonment.[5]

The Show Cause Order does not reflect that a criminal proceeding would be conducted. Rule 42(b) of the Federal Rules of Criminal Procedure provides in relevant part:

> A criminal contempt ... shall be prosecuted on notice. The notice shall state the place and time of hearing, ... and shall state the essential facts constituting the criminal contempt charged *and describe it as such.* (Emphasis added.)

Because the offending conduct could have been eliminated by coercive civil sanctions, notice was required if this was to be a criminal contempt proceeding. *American Airlines, supra.* Because the Order to Show Cause did not describe the proceeding as a criminal contempt proceeding, the notice requirement of F.R.C.P. 42(b) was not followed, and Roughton's due process rights were violated. *Richmond Black Police Officers v. City of Richmond, Va.,*

---

[5]In fact, this is exactly how the order was actually executed, notwithstanding the face of the contempt order, which indicated that the 72 hour imprisonment was absolute. Once the district judge learned that Roughton had complied with the order to produce the returns and to pay the $909.00 attorney's fee, he immediately signed an order granting Roughton's release, finding that he had purged himself of contempt.

548 F.2d 123, 127 (4th Cir.1977). Moreover, no independent prosecutor was appointed, which is another procedural defect.[6]

FDIC attempts to characterize the proceeding as civil in nature based upon the fact that the magistrate had recommended in his report that Roughton be held in civil contempt until the tax returns were paid. It points out that Roughton was taken into custody on the morning of October 4, 1993, and released later that day after he "purged" the contempt by fulfilling the conditions of the District Court's order. Thus, the district judge released Roughton from the strict terms of the order, i.e., the absolute 72 hour sentence, once he produced the returns and paid the money to FDIC. Nonetheless, the written order reads like a criminal contempt order in that it imposes an absolute 72 hour sentence, after which Roughton could then be released upon compliance. Pursuant to the wording of the order, Roughton was placed in criminal contempt, without notice. The fact that the district judge actually released Roughton from custody immediately upon Roughton's compliance with the court's orders means only that the criminal portion of the order was not in fact executed, not that it was not imposed. As far as Roughton or anyone else can tell from a review of the written order, Roughton appears to have been held in criminal contempt. Roughton seeks to have the criminal portion of the order vacated in order to avoid any negative connotation

---

[6]In a Rule 42(b) criminal contempt proceeding, the judge may not prosecute the contempt and at the same time act as judge. To do so deprives the defendant of an impartial decisionmaker. *American Airlines, supra,* 968 F.2d at 531.

which might result from what appears on the face of the order to be a conviction for criminal contempt.

FDIC also attempts to characterize the proceeding as civil based upon the fact that the Court granted remedial relief to FDIC, i.e., the attorney's fees, rather than a fine to be paid to the Court. FDIC points out that typically a fine is punitive when paid to the court and remedial when paid to the harmed party. The contempt order in this case involves a true mixture of both criminal and civil relief. Accordingly, it should be characterized as criminal for purposes of appeal. *Lamar, supra,* 918 F.2d at 567. This characterization permits the review of civil contempt orders which would otherwise not be final and appealable. However, it does not necessarily follow that, even if this is a true "mixed relief" case, a Court must vacate and remand the whole proceeding for failure to comply with criminal procedure. In *Lamar,* the reviewing court vacated and remanded the criminal portion of the order but affirmed the civil portion after finding the district court had not abused its discretion in granting the civil relief. *Ibid.*

Thus, as FDIC correctly points out, even though we find that the 72 hours custody provision is a separate criminal sanction, we need only vacate the criminal element of the order. A remand is not necessary because the order has already been executed as though it were one of civil contempt, with the criminal portion (the 72 hour sentence) of the order unimposed, and Roughton has been purged of contempt via the district judge's order. We merely vacate the

criminal portion to clear Roughton's name and record and to avoid any possible negative connotation that might inure by virtue of the criminal element of the order.

*Was there sufficient evidence for a finding of civil contempt?*

Having determined that we should vacate the criminal portion of the order, we next turn our attention to the civil aspects of the order. Roughton argues that there was insufficient evidence to support a finding of civil contempt, and that the civil contempt order should be reversed. He claims that the FDIC did not present sufficient evidence to satisfy the "clear and convincing" evidentiary standard required for civil contempt. He argues that the District Court erred in finding contempt in the absence of any evidence, witnesses or documents demonstrating Roughton's violation of the underlying order compelling production of tax returns. He argues that he was denied the right to present witnesses and that the underlying order compelling production of the returns was "vague" and "ambiguous" and not susceptible to enforcement through a contempt proceeding. We disagree with each of Roughton's contentions.

In a civil contempt proceeding, the party seeking an order of contempt need only establish (1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order. *Martin v. Trinity Industries, Inc.,* 959 F.2d 45, 47 (5th Cir.1992). To determine compliance with an order, the court simply asks whether the respondent has produced the documents. If he has

14

not, the burden shifts to the respondent to rebut this conclusion, demonstrate an inability to comply, or present other relevant defenses. *United States v. Hayes,* 722 F.2d 723, 725 (11th Cir.1984); *Star Brite Distributing, Inc. v. Gavin,* 746 F.Supp. 633, 643 (N.D.Miss.1990).

There was no dispute that the order compelling production of the returns was in effect at the time of the hearing. Despite numerous attempts, Roughton failed to obtain a stay of the order either from the district court or from this Court. At the show cause hearing, counsel for FDIC notified the district court of the denial of these stays. Second, the magistrate's order clearly required the following:

> Within ten days of the date of this order Defendant Roughton will produce his federal tax returns for 1989, 1990 and 1991 to *counsel* for Plaintiff. (emphasis added.)

Roughton's assertions that this order is vague have no merit. FDIC claims it established Roughton's violation of this order through the representations of its counsel and documentary evidence submitted to the Court. In the FDIC's motion for contempt hearing before the magistrate and at the show cause hearing, FDIC counsel advised the district court of Roughton's continuing violation of the order. The FDIC's motion for contempt supplemented these representations with various letters showing its efforts to secure Roughton's tax returns and an affidavit supporting the $909.00 attorney's fee claim.

Roughton claims this information does not provide a sufficient basis for the District Court's finding of contempt. He points to

the fact that argument of counsel during a hearing on a motion does not constitute evidence. He also notes that the letters between counsel regarding the returns were not authenticated nor offered into evidence. Roughton claims it was an abuse of discretion for the district judge to have made a finding of contempt without adducing any evidence, relying instead upon statements of counsel for FDIC that the returns had not been produced. FDIC counters by pointing out that the attorney had personal knowledge of Roughton's failure to comply. The magistrate's order required that the documents be produced to counsel for FDIC. Moreover, the attorney for FDIC signed the motion for contempt, which stated that the returns had not been produced, thereby certifying under his Rule 11[7] duty that the statements therein were well-grounded in fact.

Roughton never opposed this allegation forwarded by FDIC, either in a memorandum in opposition to the motion for contempt or at the hearings. Roughton has never denied that, at the time of the contempt hearing, he was in violation of the order compelling productions. He points to nothing which would rebut the FDIC's representations concerning his noncompliance. Until the show cause hearing, Roughton presented no proffer of evidence to demonstrate an inability to comply with the order. Roughton raised objections at the show cause hearing only as to the jurisdiction and

---

[7]Federal Rule of Civil Procedure 11 provides generally that, in presenting a pleading, motion, etc., to the court, one is certifying that to the best of that person's knowledge, information, and belief, formed after reasonable inquiry, that any factual contentions therein have evidentiary support. Sanctions may be imposed for violations of Rule 11.

fact-finding of the magistrate and the purported vagueness and ambiguity of the order compelling production of the returns. Roughton has never offered any evidence or anything at all to rebut the position of FDIC that the returns had not been produced. In fact, evidence presented by Roughton at the show cause hearing helps to establish that the returns had not been produced.

Roughton's wife, Pricilla Roughton, submitted to the district court an affidavit asserting her sole possession and custody of their joint tax returns and her unwillingness to deliver them to her husband. This affidavit itself implicitly establishes as well the fact that Andrew Roughton had not produced the returns to FDIC. Although Pricilla Roughton's last-minute submission apparently was found not to be credible in helping Roughton to avoid the contempt ruling, it nonetheless is a part of the record and helps to establish that the returns had not been produced.

Also, counsel for FDIC submitted an affidavit concerning the attorneys' fees which had been incurred relative to the motion for contempt. In the affidavit, counsel for FDIC reiterates that defendant had failed to produce the returns. Thus, we squarely reject Roughton's argument that there was not clear and convincing evidence to support a finding that Roughton had not in fact produced the returns.

*Should Roughton have been ordered to produce the tax returns?*

Roughton's final argument is that he should not have been ordered to produce the tax returns in question. Accordingly, he seems to request that we try to "unring the bell" and order the

17

return of all documents produced, all copies thereof, and that FDIC be ordered to expunge from its files any information which may have been derived from the production of the returns.  We do not have to attempt this impossible task.  The tax returns were relevant to the case, and the district judge and magistrate did not err in ordering their disclosure.

Roughton erroneously argues that state procedural rules apply to the determination of the post-judgment discovery issue. F.R.C.P. 69(a) permits a party to obtain postjudgment discovery from the judgment debtor "in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held."  A judgment creditor thus has the choice of which method to use.  FDIC clearly indicated its intent to pursue postjudgment discovery in the manner provided by the Federal Rules of Civil Procedure, thus, Texas law does not apply to the FDIC's discovery request.  Instead, federal law will apply.  Texas cases cited by Roughton to establish that production of the tax returns should not have been ordered are irrelevant.  Tax returns are not privileged.  Moreover, state privilege laws should not be relied upon where the documents in question are sought by a governmental agency, like the FDIC. *See, Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC,* 5 F.3d 1508, 1513-14 (D.C.Cir.1993)

The scope of postjudgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made.  Some courts have applied a two-part test in determining whether returns should be produced.  See *United States v. Bonanno,*

119 F.R.D. 625, 627 (E.D.N.Y.1988). The party seeking production of the documents must show their relevance to the inquiry. Then, the burden shifts to the party opposing production to show that other sources exist from which the information contained in the income tax returns may be readily obtained.

Under these facts, relevance of the tax returns to a judgment creditor is virtually presumed. A tax return necessarily contains information relating to a taxpayer's financial position, which is highly relevant to a judgment creditor. The tax return can verify the information provided by the judgment-debtor concerning his assets and income, and it can reveal a judgment-debtor's attempts to hide assets. We find that FDIC has met its burden of showing relevance. However, we conclude that Roughton failed to carry his burden since he apparently failed to present any evidence at the hearing establishing other sources by which FDIC could have obtained a copy of Roughton's returns or otherwise could have verified the truth of the information Roughton had given FDIC regarding his income and/or assets. Roughton misreads *Bonanno* as requiring the party seeking the documents to prove *both* prongs of the test. Roughton's other arguments with reference to the discoverability of the tax returns lack merit as well.

## Conclusion

We affirm the civil portion of the contempt order and vacate the criminal portion of that order. Remand is not necessary because the order was executed by the district court as though it were civil. AFFIRMED in part and VACATED in part.