IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10824

_____


MICHAEL J QUILLING

             Appellee

SECURITIES AND EXCHANGE COMMISSION

             Plaintiff - Appellee

     v.

FUNDING RESOURCE GROUP, also known as FRG TRUST; ET AL

             Defendants

BENJAMIN DAVID GILLILAND

             Defendant - Appellant

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

September 6, 2000

Before KING, Chief Judge, PARKER, Circuit Judge, and KAZEN, District Judge.[*]

PER CURIAM:

     Appellant B. David Gilliland appeals from the district court's orders finding him in contempt of court, and denying his emergency motion to vacate and emergency motion to stay the

_____

[*] Chief Judge of the Southern District of Texas, sitting by designation.

contempt order.  Because we conclude that the contempt order does not constitute a final order for the purposes of 28 U.S.C. § 1291 and that we therefore lack jurisdiction to review it, we dismiss the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The contempt order appealed from here arises out of a civil enforcement action brought by Plaintiff-Appellee the Securities and Exchange Commission (the "SEC") against a number of individuals and entities who allegedly engaged in a fraudulent scheme for selling unregistered securities (the "defendants"). This scheme took the form of a Ponzi or pyramid scheme in which the defendants allegedly sold nonexistent "prime bank" securities to investors, and used the proceeds of those sales to reimburse themselves for personal expenses and to pay earlier investors.

The SEC sought, inter alia, to disgorge the approximately $14 million in proceeds of the allegedly illegal sales of unregistered securities.  These funds were traced not only to the defendants, but also to Hammersmith Trust, LLC, Hammersmith Trust, Ltd., and Appellant B. David Gilliland, among others.[1]  As a result, the SEC requested that the assets of the defendants,

_____

[1]  The SEC also alleged that Howe Financial Trust, Treds Financial Trust, Mary Ann Bauce, Bridgeport Alliance, LLC, Landfair Custodial Services, Inc., Microfund, LLC, American Pacific Bank & Trust, Inc., Eurofund Investment Inc., and Melody Rose received wrongfully-obtained funds from defendants.

2

Gilliland, Hammersmith Trust, LLC, and Hammersmith Trust, Ltd. be frozen; that the defendants, Gilliland, Hammersmith Trust, LLC, and Hammersmith Trust, Ltd. submit an accounting of all their assets and funds received from investors and from one another; and that a receiver be appointed.

On January 21, 1999 and on March 11, 1999, the district court entered orders freezing the assets of Gilliland, Hammersmith Trust, LLC, and Hammersmith Trust, Ltd.[2] and appointing Appellee Michael J. Quilling ("Quilling" or the "receiver") as temporary receiver for and over those assets (the "freeze orders"). The parties affected by the freeze orders filed motions for relief, and Quilling filed a motion to hold Gilliland in contempt. On March 22, 1999, the district court held a hearing at which the parties informed the court that they had reached a compromise agreement. On March 26, 1999, the district court signed an order modifying and abating the freeze orders (the "agreed order"). The agreed order provided that (1) the receiver was to receive payments totaling $2,745,000.00 by three p.m. on April 19, 1999; (2) "[p]ending performance by all parties to this order . . . all proceedings, motions, discovery

---

[2] Quilling was also named as receiver over the assets of American Pacific Bank & Trust, Inc., Microfund, LLC, Landfair Custodial Services, Inc., Bridgeport Alliance, LLC, Economic Development Corporation, Concorde International Holding Corp., Eurofund Investments, Inc., Continental Management Group, Inc., Primary Services, Inc., Seven Dials Aviation Corp., William H. West, David M. Bishara, Melody Rose, Kenneth B. Cobb, and Raymond J. Hanson.

3

and activity in this case shall be abated, as it affects the Receiver, the SEC, and the Affected Parties;" and (3) the freeze orders were modified and abated, and the assets frozen pursuant to those orders were released and unfrozen.[3]  Gilliland, Hammersmith Trust, LLC, and Hammersmith Trust, Ltd. were responsible for making the payments specified by the agreed order on behalf of the affected parties.

Gilliland, Hammersmith Trust, LLC, and Hammersmith Trust, Ltd. timely made payments in the amount of $1,050,000.00 to the receiver.  However, the remaining payment of $1,695,000.00 was not made by the date specified in the agreed order.  On April 21, 1999, Quilling brought a motion requesting an order to show cause why Gilliland should not be held in contempt.  The SEC also filed a contempt motion on the same day.

On May 17, 1999, the district court held a show cause hearing.  Gilliland appeared on his own behalf, and as the agent for Hammersmith Trust, LLC and Hammersmith Trust, Ltd.  On May 24, 1999, the district court issued an order finding Gilliland in contempt of court ("May 24 contempt order").  In its order, the district court noted that Gilliland had stated at the show cause hearing that he could pay the remaining sums to the receiver and

---

[3]  The agreed order specified, however, that the freeze orders were not abated with regard to Seven Dials Aviation Corp., an airplane designated for sale in an order entered on March 22, 1999, and an account containing $1,395,000.00 to be identified as payment to Quilling in his capacity as receiver.

purge himself of contempt within 45 days.  The court consequently gave Gilliland until July 2, 1999 to purge himself of contempt by paying $1,695,000.00 into the receiver's bank account.  The order provided that, if the payment were not made by three p.m. on that date, the United States marshal would take Gilliland into custody until the payment was made.

On July 2, 1999, Gilliland filed an emergency motion to vacate and an emergency motion to stay the contempt order.  On July 14, 1999, the SEC filed an emergency motion to freeze assets, to reinstate the receiver, and to conduct expedited discovery.  The district court granted the stay order, and set an omnibus hearing for July 22, 1999.[4]  Gilliland was the primary witness at the hearing, which lasted almost a full day.  At the conclusion of the hearing, the district court made oral findings that Gilliland was not credible, and that "Gilliland's inability to pay was not involuntarily created."

The district court reiterated these findings in an order filed on July 23, 1999 ("July 23 contempt order").  The July 23 contempt order denied the emergency motion to vacate and the emergency motion to stay, and vacated its previous order granting a stay.  The order directed the United States marshal to take Gilliland, individually and as agent for Hammersmith Trust, LLC

---

[4]  The hearing also addressed a joint motion by the SEC and the receiver to amend the order finding Gilliland in contempt of court, and two additional show cause motions.

5

and Hammersmith Trust, Ltd., into custody, and provided that Gilliland be held until "this Court determines that the remaining $1,695,000.00 ordered to be paid to the Receiver . . . has in fact been paid to the Receiver." Gilliland timely appeals.[5]

## II. DISCUSSION

Gilliland presents several arguments in support of his contention that the district court erred in finding him in contempt. However, we do not address the merits of these arguments because we conclude that we lack jurisdiction over his appeal.[6]

The general rule in this circuit is that civil contempt orders are not appealable final orders for the purposes of 28 U.S.C. § 1291. See Lamar Financial Corp. v. Adams, 918 F.2d 564, 566 (5th Cir. 1990) (citations omitted). An exception to this rule exists "[w]hen a civil contempt motion is not part of continuing litigation, . . . because no underlying case awaits final resolution." In re Grand Jury Subpoena for Attorney

_____

[5] Gilliland's notice of appeal addresses the May 24 order, the denial of the motion to vacate, and the denial of the motion to stay. This court initially granted a stay of the district court's contempt order pending appeal. See Quilling v. Gilliland, No. 99-10824 (5th Cir. July 23, 1999) (granting motion for stay). On July 23, 1999, however, the district court signed an order staying the contempt order. As a result, this court vacated its prior order. See Quilling v. Gilliland, No. 99-10824 (5th Cir. July 26, 1999) (denying motion for stay as moot).

[6] The SEC's motion to dismiss the appeal, in which Quilling joined, was carried with the case.

6

Representing Criminal Defendant Reyes-Requena, 926 F.2d 1423, 1429 (5th Cir. 1991) (citing Sanders v. Monsanto, 574 F.2d 198, 199 (5th Cir. 1978)).

Gilliland argues that we have jurisdiction to hear his appeal because (1) the nature of the contempt sanction is criminal, rather than civil; (2) the contempt sanction was imposed to enforce a consent judgment; and (3) the contempt proceedings are final because they are separate and distinct from the underlying SEC enforcement action. We address these arguments seriatim.

First, we agree with the SEC that the sanctions at issue are properly characterized as civil contempt sanctions. This court has defined a civil contempt sanction as one whose purpose "is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation." See Lamar, 918 F.2d at 566 (citations omitted). Here, the May 24 and July 23 contempt orders clearly state that Gilliland is only to be imprisoned until the remaining payment to the receiver is made. Even though the district court stated at the July 22 hearing that it was "going to punish [Gilliland] for contempt," a reviewing court must examine the character of the relief itself, rather than rely upon the stated purpose of the contempt sanction. See International Union, Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994) (citations omitted). Our examination thereof convinces us that the sanction imposed on

7

Gilliland falls within "[t]he paradigmatic coercive, civil contempt sanction . . . [that] involves confining a contemnor indefinitely until he complies with an affirmative command . . . ." Id. (citations omitted).

Gilliland, however, contends that his purported inability to comply with the July 23 order renders the sanction punitive, rather than coercive. Since punishment is the purpose of criminal contempt, he argues, the sanction is criminal and is therefore subject to immediate appellate review. In making this argument, he relies on the Ninth Circuit's decision in Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782 (9th Cir. 1983). We note that there appears to be a conflict, even within the Ninth Circuit, as to this rule. See United States v. Asay, 614 F.2d 655, 659 (9th Cir. 1980) ("Because Asay may have been unable to comply with the summonses and order at the time the contempt judgment was issued does not mean the fine was for criminal contempt."). We also observe that this circuit has never held that the inability to comply with an order converts a civil sanction to a criminal one. We need not reach that question ourselves because it is apparent from the July 23 contempt order that the district court was not convinced that Gilliland was unable to pay the remaining $1,695,000.00. The district court specifically found "B. David Gilliland not to be credible." Because Gilliland testified in order to establish that he was unable to pay the receiver, and because a contemnor

8

must prove his inability to comply with a court order with credible evidence, see United States v. Sorrells, 877 F.2d 346, 349-50 & n.4 (5ᵗʰ Cir. 1989), we have no difficulty in construing the district court's finding to mean that Gilliland had not proved that inability. We have reviewed the record, and there is ample evidence to support that finding. The district court's additional finding that Gilliland's "alleged inability to pay was not involuntarily created" merely presented an alternative rationale for denying Gilliland's motions. As we are not persuaded by Gilliland's first argument, we proceed to the second.

Although Gilliland correctly states that a contempt order entered to enforce a final judgment is itself a final and appealable order, there was no final judgment in the instant case. An examination of the plain language of the agreed order reveals that it does not purport to be a final judgment. Rather, the bulk of the agreed order is devoted to enumerating the conditions upon which such a judgment depended. As the district court noted, the parties had agreed "that the Court modify and abate the Freeze Orders, pending the performance of the compromise, and that contingent on the parties [sic] performance of the compromise, that the Court enter an order of partial dismissal at a later date" (emphasis added). The agreed order specifically provides that the abatement of "all proceedings, motions, discovery, and activity in this case . . . as it affects

9

the Receiver, the SEC, and [the parties affected by the freeze orders]" is contingent upon the performance of the terms of the order by all parties. Thus, the agreed order contemplates that final judgment with regard to Gilliland, Hammersmith Trust, LLC, Hammersmith Trust, Ltd. and the other individuals and entities referenced in the agreed order be entered only once the parties had paid $2,475,000.00 to the receiver. As evidenced by the contempt proceedings at issue, this condition has not been fulfilled. Furthermore, the district court's docket sheet does not reflect that a final judgment with regard to the parties enumerated in the agreed order was ever entered. As a result, we conclude that Gilliland's second argument likewise misses the mark. Cf. Zucker v. Maxicare Health Plans, Inc., 14 F.3d 477, 481 (9th Cir. 1994)("Therefore, the Judgment by its own terms is neither final nor enforceable absent some modification of the Judgment or other action by the district court indicating that the Judgment is final notwithstanding the non-fulfillment of its terms.").

Finally, we turn to Gilliland's contention that the contempt order is final because it is "not entwined with the underlying case." The rationale underlying this exception to the general rule against reviewing civil contempt orders is that "[c]ontempt motions that are not part and parcel of a continuing litigation . . . are final and subject to review because with respect to the contempt issue, no further district court action occurs." See

10

<u>Sanders</u>, 574 F.2d at 199 (emphasis added).  Here, to the contrary, we note that on July 22, 1999, the district court entered an order freezing the assets of Gilliland, Hammersmith Trust, LLC,[7] and Hammersmith Trust, Ltd., among others, and enjoined those parties from "destroying, removing, mutilating, altering, concealing and/or disposing of, in any manner, any books and records pending further order of this Court."  The order also appointed Quilling as receiver over those parties' assets, authorized expedited discovery, and required Gilliland, the Hammersmith Trust entities, and the other named individuals and entities to make an interim accounting within ten days of the entry of the order.  This order clearly constituted further court action relating to the contempt order.  Moreover, the court will need to supervise the proceedings instituted by the order and issue additional orders in order to terminate them at the appropriate time.  As far as we can discern, there is no end in sight for the contempt proceedings -- or, for that matter, for Gilliland's and the Hammersmith Trust entities' involvement in the underlying SEC enforcement action.  As a result, we conclude that the contempt order is not final and that we therefore lack jurisdiction to review Gilliland's claims.  We dismiss the appeal for lack of jurisdiction.

---

[7] The district court's order addressed both the Hammersmith Trust, LLC entity incorporated in Tennessee, and the Hammersmith Trust, LLC entity incorporated in the West Indies.

## III. CONCLUSION

For the foregoing reasons, the appeal is DISMISSED.