**In re Charles Benton MUSSLEWHITE and Carolyn Diaz Musslewhite, Debtors.**

**Benton Musslewhite and Carolyn Musslewhite, Appellants,**

v.

**John M. O'Quinn, Individually; John M. O'Quinn, P.C.; and John M. O'Quinn d/b/a O'Quinn & Laminack, Appellees.**

Bankruptcy No. 95–48399–H4–11.
Adversary No. 97–4628.
Civ.A. No. H–00–2368.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 28, 2000.

**74**

Benton Musslewhite, Attorney at Law, Carolyn Diaz Musslewhite, [Pro se], Houston, TX, for Charles Benton Musslewhite, Sr., Carolyn Diaz Musslewhite, debtors.

Patrick L. Hughes, Haynes & Boone LLP, Houston, TX, for John M. O'Quinn, Individually, John M. O'Quinn P.C., John M. O'Quinn dba O'Quinn & Laminack, appellees.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This Court has before it an appeal by Debtors Charles Benton Musslewhite and Carolyn Diaz Musslewhite (collectively, "Appellants" or "Debtors") challenging the propriety and the amount of sanctions imposed by the Honorable Bankruptcy Judge William R. Greendyke in the above-captioned adversary proceeding, Adversary No. 97–4628. Debtors also appear to challenge the sanctions imposed by Bankruptcy Judge Greendyke in Adversary No. 99–3111, a case removed from the 133rd Judicial District Court of Harris County.[1]

1. Appellants/Debtors filed suit against the same three Defendants in state court, contending that the causes of action are non-core matters independent of the issues raised in the earlier bankruptcy case and adversary proceeding. Defendants removed the case to Federal Court and the Bankruptcy Court held an extensive hearing on Defendants' motion to dismiss Debtors' claims and the Debtors' motion to remand, as well as other matters. On September 16, 1999, the Bankruptcy Court granted in part and denied in part the motions to dismiss and to remand, and set another hearing on Defendants' motion for civil contempt sanctions and on the removed petition concerning collection of attorneys' fees in certain personal injury contingency cases. The Bankruptcy Court held that hearing on October 27, 1999. The Bankruptcy Court ruled (orally) in favor of Defendants on the civil sanctions (and on Count 5 of the Debtors' state petition) at the close of the hearing on October 27, 1999. *See* Adv. No. 99–3111 [Doc. # 57]. The Bankruptcy Court issued a written order pertaining to the civil sanctions entitled "Final Judgment and Order Imposing Sanctions," April 11, 2000, Adv. No. 99–3111 [Doc. # 66], in which Defen-

Only issues pertaining to Adversary No. 97–4628 will be addressed.

This appeal continues a protracted series of disputes between Debtors and John M. O'Quinn and his law firm that centers on Debtor Benton Musslewhite and O'Quinn's claims to contingency attorneys' fees in personal injury cases.

This Court affirmed Bankruptcy Judge Greendyke's award of sanctions by Memorandum and Order filed February 22, 1999 but remanded the case for further findings by the Bankruptcy Court as to the appropriate amount of sanctions. The Bankruptcy Court, after appropriate notice, held an evidentiary hearing on May 21, 1999 on the matter. Bankruptcy Judge Greendyke ruled that $105,700 in attorneys' fees and $16,777.51 in expenses were incurred by Defendants as a result of Debtors' sanctionable conduct. The Bankruptcy Court also ruled that Chris Steed, an attorney who also worked on the matters as a result of Debtors' contemptuous conduct, was entitled to $13,755 in attorneys' fees.

Debtors attempt to raise numerous issues on appeal. By Order entered on August 8, 2000, as well as September 12, 2000, this Court ruled that most of the issues articulated by Debtors have been decided in a prior appeal to this Court or are not properly the subject of the appeal now pending. *See* Memorandum and Order dated August 8, 2000 [Doc. # 11].[2]

Appellee, John M. O'Quinn, Individually, John M. O'Quinn, P.C., and John M. O'Quinn, d/b/a O'Quinn and Laminack (collectively, "O'Quinn"), has responded to the Brief by Appellants/Debtors articulating several points of opposition. First, O'Quinn notes that many of the issues Debtors assert are outside the proper scope of this appeal, as defined by the Court's September 12th Order. Defendants also contend that the sums awarded as damages in the Bankruptcy Court's Order Imposing Sanctions in the adversary proceeding in issue were warranted as compensation for Appellees' attorneys' fees and expenses incurred as a result of Debtors' repeated contempt of the Bankruptcy Court's Confirmation Order, two "Conveyance Orders," and a further injunction prohibiting Debtors' interference in implementation of their Chapter 11 plan of reorganization and O'Quinn's collection of the property conveyed by those orders.

The Court affirms the Bankruptcy Court's Order Imposing Sanctions dated April 11, 2000 in Adversary No. 97–4628.

dants were awarded $51,388.94 in attorneys' fees and expenses, the same amount stated in the Bankruptcy Court's earlier oral ruling. Debtors did not file a timely appeal from these rulings, and they became final on April 25, 2000. This Court, therefore, lacks jurisdiction over issues arising from the Bankruptcy Court's rulings in Adversary No. 99–3111, and will not address those matters. *See* Bankruptcy Rule 8001(a), 8002(a); *Matter of CPDC Inc.*, 221 F.3d 693, 698 (5th Cir.2000) (noting that appellant's failure to timely file notice of appeal deprives reviewing court of jurisdiction).

**2.** The Court's Memorandum and Order refers to the Bankruptcy Court's issuance on April 21, 2000 of a "Final Order Imposing Sanctions" on Debtor, citing "Order Imposing Sanctions" [Bankr.Doc. # 82, in Adversary No. 97–4628]. The Bankruptcy Court's Order Imposing Sanctions in this case actually was issued and entered by the Bankruptcy Court on April 11, 2000; this Court's reference to "April 21" is a typographical error. The August 8th Memorandum and Order is hereby amended to reflect April 11, 2000 as the date for the Bankruptcy Court's Order Imposing Sanctions in this proceeding. This appeal addresses only the order quantifying the sanctions issued and entered by the Bankruptcy Court on April 11, 2000. For all other purposes and in all other respects, this Court's August 8th and September 12th Orders are reaffirmed.

## BACKGROUND FACTS

The factual history of the parties' relationship, the Bankruptcy Court's orders that Debtors violated, and the Bankruptcy Court's original sanctions order all have been described in detail by this Court in the Memorandum and Order entered February 22, 1999, affirming the Bankruptcy Court's Order entered May 21, 1998. In the May 21, 1998 Order, the Bankruptcy Court found Debtors in civil contempt of the Bankruptcy Court's various prior orders confirming Debtors' plan of reorganization, irrevocably conveying Debtors' property interests in various contingency fee contracts to O'Quinn, enjoining Debtors from interfering with O'Quinn's handling of specified personal injury litigation and collecting fees arising from associated contingency fee contracts, denying Debtors' request to reopen Debtors' related bankruptcy case, dismissing Debtors' attempted cross-claims, and awarding sanctions generally. However, in the February 1999 Memorandum and Order, this Court remanded the issue of the amount of damages justified as a result of the sanctionable conduct by Debtors. This Court directed the Bankruptcy Court, upon remand, to issue further factual findings concerning the damages proximately caused by Debtors' civil contempt.

The Bankruptcy Court therefore held a hearing in this adversary proceeding on May 21, 1999, to address these matters.[3] The trial on the amount of appropriate sanctions (and related damages to O'Quinn) included live testimony addressing factual matters as well as expert opinions. Numerous documents were introduced into evidence. Evidence also was presented establishing Debtors' ability to pay sanctions. The Bankruptcy Court was uniquely well situated to assess this evidence since that court had detailed familiarity with Debtors' financial circumstances due to the extensive proceedings over which it had presided. The evidence also addressed the issue of whether lesser sanctions were capable of deterring the offending conduct. At trial on remand, Debtor Benton Musslewhite essentially admitted he acted wrongly and that some of the damages were warranted. *See* Transcript, Factual Hearing under *Topalian v. Ehrman,* May 21, 1999 [Bankr.Doc. # 86, in Adversary No. 97–4628], at 259, 263.

The Bankruptcy Court attempted to isolate damages proximately caused by Debtors' acts of contempt in violation of the pertinent Bankruptcy Court orders, as well as in the ensuing appeal and remand in Adversary No. 97–4628.

In quantifying the damages in Adversary No. 97–4628, the Bankruptcy Court did not consider conduct by Debtors (or damages to O'Quinn) associated with the separate adversary proceeding entitled *Musslewhite v. O'Quinn, et al.,* Adversary No. 99–3111, a case that had reached bankruptcy court as a result of O'Quinn's removal of a state court case filed by Debtors claiming state law violations by O'Quinn in connection with contingency fee contracts and allegedly non-core matters unrelated to their bankruptcy plan of reorganization. The Bankruptcy Court in Adversary No. 99–3111 held that Debtors had engaged in contumacious behavior in relation to that proceeding. The Bankruptcy Court based that ruling on Debtors' conduct entirely separate from that in issue at

---

**3.** The Bankruptcy Court originally scheduled a trial promptly after remand from the district court. However, the initial trial date had to be continued because Debtors filed a motion for new trial in the district court. Debtors also sought a delay allegedly in order to obtain additional discovery on the damages claimed by Appellees in connection with the conduct held to be violative of the Bankruptcy Court's orders.

bar. Debtors did not appeal the rulings in Adversary No. 99–3111, and those orders are not before this Court.[4]

### STANDARD OF REVIEW

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158 and 157(a) since the appeal arises from an adversary proceeding. The standard of review of a bankruptcy court's factual determinations is set forth in Bankruptcy Rule 8013:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

*Accord Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997). The burden is on the appellant to show a reviewing court that a factual finding is "clearly erroneous." *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir.1993).[5] Reversal is proper only when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Matter of Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir.1991); *Matter of Multiponics, Inc.*, 622 F.2d 709, 723 (5th Cir.1980) (citations omitted); *Matter of Terrebonne Fuel*, 108 F.3d at 613 (court of appeals will reverse a district court's affirmance of a bankruptcy court's factual findings only when "left with a firm conviction that error has been committed.").

A bankruptcy court's decision to impose sanctions is discretionary, and therefore appellate review of the exercise of this power is for abuse of discretion. *Matter of Terrebonne Fuel*, 108 F.3d at 613. Any conclusion of law by the bankruptcy court is subject to *de novo* review. *Id.* (citing *Matter of Oxford Management, Inc.*, 4 F.3d 1329, 1333 (5th Cir.1993)). When reviewing mixed questions of law and fact the court must give deference to the factual determinations made by the bankruptcy court unless clearly erroneous, but the court "must independently determine the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Matter of Bufkin Bros., Inc.*, 757 F.2d 1573, 1577–78 (5th Cir.1985) (citation omitted).

Section 105 of the Bankruptcy Code gives the Bankruptcy Court wide discretion. 11 U.S.C. § 105. Section 105(a) provides in pertinent part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude

---

4. In Adversary No. 99–3111, the Bankruptcy Court imposed sanctions against Debtors in the form of an award to O'Quinn of damages totaling $51,388.94, based on the conduct by Debtors that the Bankruptcy Court held was in contempt of its earlier orders. For the reasons set forth *supra* in note 1, the Court does not address any of the issues raised by Debtors pertaining to the award of this $51,388.94. *See* Appellants' Brief at 3, 10, 11.

5. As the Fifth Circuit has summarized, an appellate court

"does not find facts. Neither is it free to view the evidence differently as a matter of choice." *In re Placid Oil Co.*, 158 B.R. 404, 412 (N.D.Tex.1993). "We are not permitted to re-weigh the evidence on appeal simply because we disagree with the choices made by the district court." *E.E.O.C. v. Clear Lake Dodge*, 25 F.3d 265, 270 (5th Cir.1994) (citing *Anderson [v. City of Bessemer City, N.C.]*, 470 U.S. [564,] 573–74, 105 S.Ct. [1504,] 1511–12, [84 L.Ed.2d 518 (1985)]).

*Reich v. Lancaster*, 55 F.3d 1034, 1045 (5th Cir.1995).

the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

As the Fifth Circuit has noted: "The language of this provision is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." *Matter of Terrebonne Fuel,* 108 F.3d at 613 (footnotes omitted). Sanctions orders may compensate a party for damages suffered as a result of another's violation of a post-confirmation injunction under 11 U.S.C. § 1141, if the damages were "both necessary and appropriate to carry out the provisions of the bankruptcy code." *Id.* "The bankruptcy court's decision to impose sanctions is discretionary, therefore [an appellate court will] review the exercise of this power for abuse of discretion." *Id.* (citing *Shipes v. Trinity Indus.,* 987 F.2d 311, 323 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993)); *F.D.I.C. v. LeGrand,* 43 F.3d 163, 166 (5th Cir.1995).

▆ Finally, an appellate court reviews the ultimate award of attorney's fees under an abuse of discretion standard. *See, e.g., In re Anderson,* 936 F.2d 199, 203 (5th Cir.1991).

### ANALYSIS

To the extent that they appeal the Bankruptcy Court's imposition of sanctions in Adversary No. 97–4628, Debtors challenge the April 11, 2000 award of $136,232.51 to O'Quinn. The issues raised by Debtors may be summarized as follows:

1.  Are the sanctions "in effect" a fine levied as a punishment, rendering the contempt proceeding one for criminal contempt, as to which Appellants were not given proper notice, as to which the Bankruptcy Court lacks jurisdiction, and as to which the Appellants have a right of trial by jury, among other rights, in a criminal case?

2.  Was the amount of the award supported by the evidence under the four part analysis of *Topalian v. Ehrman,* 3 F.3d 931 (5th Cir.1993) and *Topalian v. Ehrman,* [84 F.3d 433] slip op. 94–20567 (5th Cir. April 12, 1996)?

The Court concludes that the Debtors' arguments lack merit.

### A. *"Civil" vs. "Criminal" Contempt*

▆ Under 11 U.S.C. § 105, a bankruptcy court has the inherent power to enter civil contempt orders for violations of the court's specific orders and injunctions. *See Matter of Terrebonne Fuel,* 108 F.3d at 612–613. "Contempt proceedings are classified as either civil or criminal, depending on their primary purpose." *Id.* at 612; *accord Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961–62 (5th Cir.1995); *LeGrand,* 43 F.3d at 168. Civil contempt can serve two purposes. It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct. *Travelhost, Inc.,* 68 F.3d at 961–62.[6] Civil contempt orders may serve to compensate for lost profits and attorneys' fees resulting from the contemptuous behavior. *Id.; cf. LeGrand,* 43 F.3d at 169–170. Criminal contempt orders, on the other hand, are designed

---

**6.** If the contempt order is compensatory in nature, it is not mooted by termination of the underlying action. *Travelhost, Inc.,* 68 F.3d at 962.

primarily to punish the contemnor and to vindicate the authority of the court. *Matter of Terrebonne Fuel,* 108 F.3d at 612; *LeGrand,* 43 F.3d at 168. In order to determine whether a sanction in a contempt order is criminal or civil in nature, "a reviewing court must examine the character of the relief itself, rather than rely upon the stated purpose of the contempt sanction." *Quilling v. Funding Resource Group,* 227 F.3d 231, 234 (5th Cir.2000).

When the civil sanction is compensatory in nature, "the end result is largely the same as an action for damages—the [victim of the contemptuous conduct] is compensated." *American Airlines, Inc. v. Allied Pilots Assoc.,* 228 F.3d 574, 584 (5th Cir.2000) (citing *Chandler v. James,* 180 F.3d 1254, 1270 (11th Cir.1999) ("Compensatory sanctions merely imitate the relief that would be provided in a damages action.")). The damages awarded as a sanction for violation of a court order are to "[reimburse] the injured party for the losses and expenses incurred because of his adversary's noncompliance." *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827 (5th Cir.1976), quoted in *American Airlines,* 228 F.3d at 585.

Debtors' first issue amounts to another challenge to the Bankruptcy Court's finding of civil contempt, a matter previously decided. This Court held in its February 1999 Memorandum and Order (at 12–14) that the Bankruptcy Court's findings that Debtors were in civil contempt of its various orders were not clearly erroneous. That holding is reaffirmed here.

As previously held, the sanctions awarded in this case qualify as civil sanctions. A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1)

that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order. *American Airlines,* 228 F.3d at 581 (citing *Martin v. Trinity Indus., Inc.,* 959 F.2d 45, 47 (5th Cir.1992)) (internal citations omitted); *Travelhost,* 68 F.3d at 960; *LeGrand,* 43 F.3d at 170. "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Id.* (citation omitted).

In this case, the Bankruptcy Court plainly set forth its intention to compensate O'Quinn for attorneys' fees incurred in response to litigation and other conduct pursued by Debtors in violation of the Bankruptcy Court's Confirmation Order and other rulings.

Debtors contend that they withdrew their offending pleadings, interventions, and other actions shortly after O'Quinn opposed them, and that Debtors endeavored to amicably work things out quickly after initiating the legal actions in issue and thus the contempt order in fact is punitive. These contentions do not raise a viable legal defense to the civil contempt findings. Rather, Debtors were obligated to obey the orders and injunctions pending reconsideration by the Bankruptcy Court or appeal to this Court. *See American Airlines,* 228 F.3d at 581; *Matter of Terrebonne Fuel,* 108 F.3d 609. The Bankruptcy Court's finding of civil contempt and that Court's exercise of discretion to impose sanctions to compensate O'Quinn for Debtors' repeated and blatant violations of the Bankruptcy Court's various orders are not clearly erroneous. The findings of violations of the court orders were proven by clear and convincing evidence and are fully supported by the record.[7]

7. In its February 1999 Memorandum, the Court did not state explicitly that it was aware

## B. The Amount of the Contempt Award for Actual Damages is Not Clearly Erroneous

■ The Bankruptcy Court possessed ample evidence of damages in the form of attorneys' fees and expenses sustained by O'Quinn as a result of Debtors' conduct in violation of the Bankruptcy Court's orders. On remand from this Court, the Bankruptcy Court made explicit findings based on an evidentiary hearing concerning the amount of damages O'Quinn sustained from Debtors' contemptuous conduct. The Bankruptcy Court evaluated the reasonableness and necessity of the services provided by all the attorneys involved, the reasonableness of the rates of the attorneys' fees being sought, and the reasonableness and necessity of the expenses. The Bankruptcy Court used the proper legal standards. The findings as to O'Quinn's damages are supported by the record. The Bankruptcy Court acted within its discretion in rejecting Debtors' self-serving efforts to evade the Bankruptcy Court's orders by second-guessing O'Quinn's decisions in various personal injury matters in which he had been delegated sole decision-making authority through the Bankruptcy Court's orders and Debtors' plan of reorganization. This Court holds that the sanction findings as to the amounts of damages, and the conduct found to be the basis of the contempt findings, are neither clearly erroneous nor an abuse of discretion. *See Topalian v. Ehrman,* 3 F.3d 931, 934 (5th Cir.1993); *Riley v. City of Jackson, Mississippi,* 99 F.3d 757, 760 (5th Cir.1996).

Debtors contend that the award is not the least severe sanction necessary to accomplish the Bankruptcy Court's purpose. This Court disagrees. The Bankruptcy Court made a realistic effort to impose the least severe sanction that it deemed appropriate, after years of analysis of Debtors' assets in connection with Debtors' bankruptcy case and associated adversary proceedings. The record before the Bankruptcy Court amply supports that Bankruptcy Court's findings as to the repetitive nature of the offending conduct and scope of the sanctions.[8] The Bankruptcy Court was in a uniquely well-informed position to assess the value of Debtors' liquid and non-liquid assets, as well as their liabilities and expenses; the Bankruptcy Court's findings reflect a sensible and conservative approach to these matters.[9] This Court concludes that the Bankruptcy Court's finding that the award of the actual attorneys' fees and expenses incurred by O'Quinn was the least severe sanction that could achieve the purpose of compensation, was not clearly erroneous.

Debtors also contend that the fees and expenses awarded as sanctions are improper because "they have been paid for"

of and considered the applicable standard of proof, namely, that contempt may not be found unless there is "clear and convincing" evidence that a Bankruptcy Court order was violated. The February 1999 Memorandum is hereby clarified. The Court has reviewed the record in Civil Action No. 98–2407, as well as all matters before this Court in this appeal (Civil Action No. 00–2368), and concludes that the Bankruptcy Court's contempt findings employ the correct burden of proof. In any event, those findings are not clearly erroneous when reviewed in light of the "clear and convincing" burden of proof.

8. Debtors (despite Benton Musslewhite being a licensed attorney purporting to be knowledgeable in litigation matters) ignored applicable rules of procedure, failed to cite and apply governing legal authorities, and made duplicative and confusing arguments that require extensive responses.

9. Indeed, the amount of damages awarded comprises a far smaller percentage of Debtors' assets than the sanction sought to be imposed in *Topalian.*

out of the fees collected by O'Quinn under certain contingency fee contracts. *See* Appellants' Brief, at 4, 41. This Court concludes that Appellants misread, either intentionally or negligently, the Plan of Reorganization and ignore critical facts. *See* PX1 (Exhibit 1 to Sanctions hearing); Appellees' Brief, at 38. Through the Plan of Reorganization and related agreements (collectively, the "Plan"), O'Quinn obtained an irrevocable ownership interest in Debtors' contingent contract rights and numerous personal injury suit contingency fee contracts in exchange for O'Quinn's payment of many of Debtors' pre-bankruptcy debts. *See, e.g.,* Appellees' Brief, at 9. Debtors do not contradict Appellees' assertion that the payments made by O'Quinn to satisfy Debtors' pre-bankruptcy obligations far exceed the fees that O'Quinn apparently collected thus far in connection with the implementation of the Plan. Even more importantly, the damages incurred by O'Quinn as attorneys' fees and expenses in defense of Debtors' contumacious conduct, as found by the Bankruptcy Court, constitute an obligation that exists independent of O'Quinn's entitlement to contingency fees due under the Plan. *See* Appellees' Brief, at 38 (citing PX 1; Tr. at 87–88, 100–115, 216–219, 248–249); Appendices A and D to Appellees' Brief.

### *CONCLUSION*

The Court concludes for the foregoing reasons that the sanctions imposed by the Bankruptcy Court are civil in nature and the amount of these sanctions is neither clearly erroneous nor an abuse of discretion. The Bankruptcy Court's award of sanctions for the conduct described in the Bankruptcy Court's Order Imposing Sanctions is supported by applicable law.

The judgment of the Bankruptcy Court is hereby **AFFIRMED**.