United States Court of Appeals,

Fifth Circuit.

No. 96-30508.

In the Matter of TERREBONNE FUEL AND LUBE, INCORPORATED, Debtor.

PLACID REFINING COMPANY, Appellant-Cross-Appellee,

v.

TERREBONNE FUEL AND LUBE, INC., Appellee-Cross-Appellant.

March 27, 1997.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, SMITH and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Placid Refining Company and Terrebonne Fuel and Lube have been engaged in an eleven-year battle originating from a fuel purchase agreement between them. Although a number of legal issues have been presented to both state and federal courts over the years, presently before this court is an appeal from a bankruptcy court's order finding Placid Refining Company in contempt for violating a post-confirmation injunction against bringing actions stemming from pre-confirmation debts.

Background

As previously recognized by the many courts which have addressed various issues in this action, the procedural history of this case is a tangled one. It all started on April 28, 1985, when Terrebonne Fuel and Lube, Inc. ("Terrebonne"), a wholesale fuel distributor, entered into a diesel fuel purchase agreement with

1

Placid Refining Company ("Placid"), whereby Placid agreed to sell Terrebonne up to 50,000 barrels of diesel fuel per month on credit with payments be made within 65 days of shipment. This agreement was for a term of one year. Placid secured Terrebonne's commitment with three separate security agreements consisting of: 1) a chattel mortgage on Terrebonne's inventory; 2) assignment of Terrebonne's accounts receivable; and 3) signatory rights on Terrebonne's bank account. These three agreements, collectively, acted as collateral. In order for Terrebonne to purchase the diesel it had to maintain and certify that 85% of the total certified value of this combined collateral exceeded the sum of its existing debt to Placid plus the price of the diesel to be purchased. Terrebonne made such certifications through borrowing base reports that were submitted weekly to Placid.

According to Placid, at the expiration of the agreement, Terrebonne owed it over $1 million of which $500,000 was past due. Placid contends that when it tried to exercise the lien against Terrebonne's bank account, Terrebonne sought protection under Chapter 11. Terrebonne did, in fact, file for Chapter 11 on May 1, 1986. On April 16, 1987, the bankruptcy court, over Placid's objections, confirmed Terrebonne's proposed reorganization plan which provided for payment of Placid's debt over five (5) years. On April 24, 1987, three days before the order of confirmation became final, Terrebonne filed an equitable subordination complaint against Placid alleging that Placid had forced it into bankruptcy by not delivering the quantities of fuel provided for in the

2

agreement. Placid moved to dismiss this complaint on the grounds of res judicata.

On June 29, 1989, the bankruptcy court dismissed Terrebonne's complaint holding that it failed to state a claim for equitable subordination and because the matters raised therein were not "core" proceedings. Thus, the bankruptcy court declined to exercise jurisdiction over the claim. No appeal was taken from this ruling.[1]

Following the refusal of the bankruptcy court to exercise jurisdiction over what it viewed as a breach of contract claim arising under state law, Terrebonne brought its action in Louisiana state court. Placid reasserted its res judicata claim arguing that the reorganization plan was final and therefore barred Terrebonne's state claim. Placid then sought leave to file a reconventional demand, a pleading identical to a counter claim, alleging that Terrebonne had over-inflated its excess positive collateral in the weekly base borrowing reports. Placid sought damages for, *inter alia,* fees and expenses incurred in the bankruptcy proceeding. Terrebonne objected to Placid's request to file this reconventional demand on numerous grounds, but the state court granted Placid's request.

In response to the filing of this reconventional demand,

---

[1] We subsequently noted that the bankruptcy court erred in determining that Terrebonne's claims against Placid were not "core" proceedings. *See In re Terrebonne Fuel and Lube, Inc.,* No. 93-3553 at p. 6, 29 F.3d 626 (5th Cir. April 4, 1994). However, we refused to re-visit that holding then and we refuse to re-visit that holding now since neither party appealed from that ruling.

3

Terrebonne went to bankruptcy court on February 16, 1993, seeking to hold Placid in contempt for seeking damages from pre-confirmation actions in state court. Placid, in response, asked the court to order Terrebonne to dismiss its state court claims, again, on res judicata grounds. On March 22, 1993, the bankruptcy court signed its order holding Placid in contempt and ordered Terrebonne to submit evidence of the cost and expense it incurred in the matter, stating that it would designate the amount of sanctions after submission of this information. In the meantime, Placid, believing to be in compliance with the contempt order, moved the state court for leave to strike all references to pre-confirmation damages from its reconventional demand and informed the state court that the only damages it was seeking were those that arose post-confirmation. In addressing Placid's response requesting a dismissal on a res judicata basis, the bankruptcy court refused to entertain Placid's request on the grounds that the matter was neither a "core" proceeding nor "related to" the bankruptcy case. Although Placid appealed this ruling on March 24, 1993, it did not obtain a stay of the bankruptcy court's order pending appeal.

The state court matter went to trial and on March 29, 1993. At the conclusion of this trial, a judgment in favor of Terrebonne was returned in the amount of $500,000. Placid filed a suspensive appeal to the state court proceeding on May 5, 1993. Cognizant of the state court's final judgment on the merits, the district court dismissed as moot (on res judicata grounds) Placid's appeal of the

4

bankruptcy court decision.  We subsequently affirmed the district court.  *See In re Terrebonne Fuel and Lube, Inc.,* 29 F.3d 626, No. 93-3553 at p. 6 (5th Cir. April 4, 1994).

In response to Placid's pursuit of a suspensive appeal in state court[2], Terrebonne filed a second motion in bankruptcy court to hold Placid in contempt for continuing to prosecute a claim of damages arising out of pre-confirmation conduct.  After extensive discovery and a hearing on the merits held on January 7, 1994, the bankruptcy court entered an order holding Placid in contempt and awarded Terrebonne $18,357.48 for costs and fees associated with the defense of the reconventional demand.  The district court affirmed this decision, Placid timely filed its notice of appeal, and Terrebonne filed its notice of cross appeal requesting the court to increase the sanction imposed on Placid for having to defend itself against Placid's appeal.

### Analysis

The thrust of Placid's argument is that, notwithstanding the fact that the bankruptcy court committed error in 1989 by dismissing Terrebonne's adversary complaint as a "non-core" proceeding, its actions were not violative of any order, standing

---

[2]It appears as though the state court appeals are complete. The intermediate court reversed the trial court, holding that Terrebonne's claim was barred by res judicata, but it was in turn reversed by the Louisiana Supreme Court. *See Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.,* 666 So.2d 624 (La.1996).  On remand to address the merits, the intermediate court rendered judgment in favor of Placid on its reconventional demand.  *See Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.,* 681 So.2d 1292 (La.App. 4 Cir.1996), *writ denied,* --- So.2d ---- (La., December 13, 1996).

5

or specific, of the bankruptcy court. However, before we reach the "core" of Placid's argument we must first address one very important issue. We must determine whether the bankruptcy court had the authority to conduct contempt proceedings in this case. If we conclude that the court did have authority then we can review the substantive issues addressing the exercise of that authority raised by both Placid and Terrebonne.

I. Contempt proceedings

Contempt proceedings are classified as either civil or criminal, depending on their primary purpose. *Lamar Financial Corp. v. Adams,* 918 F.2d 564, 566 (5th Cir.1990). If the purpose of the order is to punish the party whose conduct is in question or to vindicate the authority of the court, the order is viewed as criminal. *Id.* If, on the other hand, the purpose of the contempt order is to coerce compliance with a court order or to compensate another party for the contemnor's violation, the order is considered to be civil. *Id.* We are convinced that the contempt proceedings in this case were civil in nature, as the clear purpose of the sanction imposed upon Placid was to compensate Terrebonne for the costs and expenses in defending Placid's reconventional demand.

While we have not yet specifically addressed the issue of whether the bankruptcy courts have the statutory authority to conduct civil contempt proceedings, many other Circuits have. *In Re Walters,* 868 F.2d 665, 669 (4th Cir.1989) ("A court of bankruptcy has authority [under § 105] to issue any order necessary

6

or appropriate to carry out the provisions of the bankruptcy code."); *In Re Rainbow Magazine, Inc.,* 77 F.3d 278, 284 (9th Cir.1996) ("There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct [under § 105]."); *In Re Skinner,* 917 F.2d 444, 447 (10th Cir.1990) (holding that Congress granted bankruptcy courts civil contempt power under 11 U.S.C. § 105.); *In Re Hardy,* 97 F.3d 1384, 1389 (11th Cir.1996) ("Section 105 grants statutory contempt powers in the bankruptcy context."); *See also In Re Power Recovery Systems, Inc.,* 950 F.2d 798, 802 (1st Cir.1991) ("Bankruptcy Rule 9020(b) specifically provides that a bankruptcy court may issue an order of contempt if proper notice of procedures are given.").

We agree with our brethren in their ultimate determination. Moreover, we assent with the majority of the circuits which have addressed this issue and find that a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. § 105. This section provides in pertinent part:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or prevent an abuse of process.

The language of this provision is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or

appropriate to carry out the provisions of the bankruptcy code.[3] We find that an order, such as the one entered by the bankruptcy court, which compensates a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141, was both necessary and appropriate to carry out the provisions of the bankruptcy code.

## II. Issues raised by the parties

In light of this finding, we now summarily address the substantive issues in the case. Although the bankruptcy appellate process makes this court the second level of review, we perform the identical function as the district court. We review a bankruptcy court's finding of fact for clear error, *see Matter of Haber Oil Co.,* 12 F.3d 426, 434 (5th Cir.1994), and decide issues of law *de novo. Matter of Oxford Management, Inc.,* 4 F.3d 1329, 1333 (5th Cir.1993). Where the district court has affirmed the bankruptcy court's factual findings, we will only reverse if left with a firm conviction that error has been committed. *See Id.* The bankruptcy court's decision to impose sanctions is discretionary, therefore we review the exercise of this power for abuse of discretion. *See Shipes v. Trinity Indus.,* 987 F.2d 311, 323 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993).

Given the facts briefed on appeal, the facts in the record, oral arguments, and an adequately prepared opinion by the district

---

[3]Although we find that bankruptcy judge's can find a party in civil contempt, we must point out that bankruptcy courts lack the power to hold persons in criminal contempt. *See Matter of Hipp, Inc.,* 895 F.2d 1503, 1509 (5th Cir.1990).

court, we find that the issues raised by both Placid and Terrebonne do not merit prolonged discussion.

We find that appellant's contention that the bankruptcy court erred in imposing sanctions under 11 U.S.C. § 362(h) is inapplicable to the case at hand. The automatic stay under § 362 terminated upon confirmation of the 1987 plan of reorganization. Since Placid did not file its state reconventional demand until 1993, its claim was governed under 11 U.S.C. § 1141, the post-confirmation discharge injunction. Hence, § 362 is inapposite and the bankruptcy court correctly sanctioned Placid under § 1141.

We find that the lower court was correct in finding that Placid was not denied due process under Bankruptcy Rule 9020. Although the bankruptcy court did not strictly follow this rule, Placid was given the constitutionally required notice and an opportunity to be heard before being sanctioned. *See International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, ----- - ----, 114 S.Ct. 2552, 2557-2558, 129 L.Ed.2d 642 (1994).

We find that the lower court did not abuse its discretion in actually holding Placid in contempt.

Finally, we deny Terrebonne's request for an increase in the sanctions for having to pursue this matter on appeal.

### Conclusion

Based on the foregoing reasons, the order of the bankruptcy court holding Placid in contempt is hereby AFFIRMED. Furthermore, Terrebonne's request in its cross-appeal that the amount of sanctions be increased is DENIED.