United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 03-21104

_____

In the Matter of:

JACOBO XACUR, FELIPE XACUR, and JOSE MARIA XACUR,

Debtors,

JOSE MARIA XACUR,

Appellant,

versus

W. STEVE SMITH, TRUSTEE,

Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas
Nos. H-03-1590
H-03-1591
H-03-1592

---

Before BARKSDALE and PICKERING, Circuit Judges, and LYNN,[*] District

Judge.

PER CURIAM:[**]

---

[*]     District Judge of the Northern District of Texas, sitting by
designation.

[**]     Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Jose Maria Xacur contests an order (1) holding him in civil contempt for failing to comply with a bankruptcy court's preliminary injunction and (2) imposing sanctions. **AFFIRMED**.

## I.

Jose Maria Xacur is a Mexican national who, with his brothers, reputedly owns and controls several multi-million dollar corporations in Mexico. Xacur is a large shareholder of several companies which, taken together, are described as "the Procter and Gamble of Mexico". (When deposed in 1997, Xacur acknowledged owning a substantial stake in several companies: a 30% share in Hidrogenadora Nacional, S.A. de C.V.; a 30% share in Proteneinas y Aceites del Bajo; and, together with his wife, a 50% share in Rangel Development, Inc. In addition, evidence obtained from a suspension of payments proceeding in Mexico indicated that Xacur owned 239 shares of Series A stock and 4,700,898 shares of Series B stock in Promotor Hinsa, S.A. de C.V. He also held 2,998 shares of Series A stock and 2,985,286 of Series B stock in Detergentes y Jabones Sasil.)

On 18 September 1996, a group of Xacur's creditors placed Xacur and two of his brothers into involuntary Chapter 7 bankruptcy. W. Steve Smith was appointed interim trustee for the bankruptcy estate (the Trustee).

On 12 September 1997, the Trustee commenced an adversary proceeding against Xacur, seeking to compel, inter alia: (1) the filing of bankruptcy schedules and a statement of affairs; and (2)

2

the surrender and turnover of certain assets, including substantial realty and personalty, as well as stock certificates of several companies controlled by Xacur and his family. That same day, the bankruptcy court entered a temporary restraining order, requiring Xacur, *inter alia*, to turn over to the Trustee all stock certificates and other evidence of ownership in Xacur's companies. On 24 September 1997, the bankruptcy court entered a preliminary injunction requiring Xacur, within 15 days, to turn over the stock certificates he owned and to file bankruptcy schedules and a statement of affairs.

Xacur failed to comply. On 19 August 1999, the Trustee moved for civil contempt against Xacur, seeking money sanctions, Xacur's incarceration, and attorney's fees. Xacur obtained several continuances of the hearing on the Trustee's motion. During that period, Xacur asserted generally that he could not comply with the preliminary injunction because: it would subject him to criminal liability for violating Mexican court orders; and a bankruptcy discharge would not be recognized by Xacur's Mexican creditors without obtaining an express agreement in which the creditors agreed to recognize the discharge.

On 9 December 1999, after Xacur obtained new counsel, the bankruptcy court was advised that Xacur and the Trustee were attempting to resolve the impasse. Consequently, the bankruptcy court removed the contempt motion from the court's calendar. In

the months that followed, the Trustee and Xacur attempted to resolve Xacur's concerns.

On 8 September 2000, however, the Trustee requested that the contempt motion be restored to the bankruptcy court's calendar. A hearing was held on 16 July 2001, at which both sides presented evidence. On 11 October 2001, the bankruptcy court entered an order finding Xacur in contempt of court for failing to comply with the preliminary injunction, imposed a sanction of $5,000 for each day that Xacur failed to comply, and awarded attorney's fees in the amount of $158,626.50.

On 22 October 2001, pursuant to Bankruptcy Rule 9020, Xacur filed objections to the contempt order. At that time, Rule 9020 provided in relevant part:

> The [contempt] order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court, unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

FED. R. BANKR. P. 9020(c) (prior to 1 Dec. 2001 effective date of amendment). Rule 9033(d) provides:

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to

4

> which specific written objection has been made in accordance with this rule.

FED. R. BANKR. P. 9033(d).

On 1 December 2001, before the district court reviewed Xacur's objections, an amendment to Rule 9020 became effective. The rule was amended to read: "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest". FED. R. BANKR. P. 9020. Rule 9014 establishes the general procedures for contested matters before the bankruptcy court.

The rule-change reflected that, previously, there had been doubt whether the bankruptcy court possessed authority to hold parties in civil contempt. *See* FED. R. BANKR. P. 9020 advisory committee note to the 2001 amendments. In the 1990s, however, many circuit courts, including ours, held bankruptcy judges are authorized by statute to hold parties in civil contempt. *See* ***Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (Matter of Terrebonne Fuel & Lube, Inc.)***, 108 F.3d 609, 613 (5th Cir. 1997) (bankruptcy court possesses authority to hold civil contempt proceedings). Because it was no longer perceived that immediate review by a district court was required, the rule was changed. *See* FED. R. BANKR. P. 9020 advisory committee note to the 2001 amendments. Under the amended rule, a party held in contempt generally cannot obtain review of the contempt order until after a final order is entered, at which time the bankruptcy may be

5

reviewed by the district court. *See* FED. R. BANKR. P. 9014; 28 U.S.C. § 158(a)(1).

On 23 September 2002, based on the amendment to Rule 9020, the district court held it lacked jurisdiction to conduct *de novo* review of the contempt order. Therefore, the district court remanded the matter to the bankruptcy court for final determination. On 24 September 2002, because Xacur had not complied with the preliminary injunction, the bankruptcy court ordered Xacur's incarceration.

On 1 October 2003, the district court reviewed the contempt order, the incarceration order, and the award of attorney's fees, and affirmed. For that review, the district court applied the following standards: factual findings were reviewed for clear error; the injunction and the contempt order, for abuse of discretion; and conclusions of law, *de novo*.

## II.

At issue is whether the district court improperly dismissed Xacur's objections to the bankruptcy court's finding of contempt and improperly declined to conduct a *de novo* review of the bankruptcy court's contempt finding. In this regard, Xacur claims the district court erred by ruling that, under Rule 9020, as amended on 1 December 2001, it lacked jurisdiction to review Xacur's objections to the bankruptcy court's contempt order. Xacur maintains the district court improperly applied the amended rule

6

retroactively because his objections had been filed before the amended rule became effective.

The Supreme Court order adopting the 1 December 2001 amendment to Rule 9020 states that the amended rule "shall govern ... insofar as just and practicable, [in] all proceedings then pending". H.R. Doc. No. 107-60, at 3 (2001), *reprinted in* 121 S. Ct. 129 (2001). Because Xacur's objections to the contempt order were pending when Rule 9020 was amended, the amended rule should apply to this case unless it is not "just and practicable" to do so.

In contending it is not proper to apply the amended rule, Xacur asserts only that he was deprived of a *de novo* hearing by the district court, and this deprived him of an important safeguard to his rights. Xacur makes no contention, however, that, had he received a *de novo* hearing, he would have offered any additional evidence or that there was any other reason why it was not "just and practicable" to apply the amended rule and not hold the hearing. Even though the Trustee urged in response that the contempt finding would withstand *de novo* review, Xacur did not reply.

Accordingly, Xacur fails to show improper application of amended Rule 9020. Therefore, his challenge to the order at issue fails.

7

III.

For the foregoing reasons, the judgment is

***AFFIRMED.***