**In re Jeffrey Warren MILLER and Laura Lynn Miller d/b/a/ Florida Sweep, Debtor(s).**

**No. 9:05–bk–01650–ALP.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

March 26, 2008.

Scott A. Johnson, Johnson Law Group LLP, Minnetonka, MN, William G. Whitcomb, Fort Myers, FL, for Debtors.

## *ORDER ON MOTION FOR CONTEMPT SANCTIONS*

(Doc. No. 51)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case of Jeffrey Warren Miller and Laura Lynn Miller (the Debtors) is a Motion for Contempt Sanctions filed by the Debtors against Carefree Services, Inc. (Carefree) and its counsel for violating the discharge injunction. The relevant facts leading up to the Debtors' Motion currently before this Courts are as follows.

Prior to filing the voluntary Petition for Relief, the Debtor, Jeffrey Miller (the Debtor), owned and operated Metro Lot Maintenance, d/b/a Metro Sweep (Metro Lot) in or near Minneapolis, Minnesota. In September 2003, the Debtor and Carefree entered into an Agreement for the sale of the assets of Metro Sweep. (*See* Affidavit of Scott A. Johnson, Doc. 54, Ex. 1) (S. Johnson's Aff'd.). On March 1, 2004, the parties modified the original Agreement and executed a Settlement Agreement and Release (Amended Agreement). (*See* S. Johnson's Aff'd., Doc. No. 54, Ex. 2). Both the original Agreement and the Amended Agreement contained a non-compete clause, the most recent of which extended it until March 1, 2006.

On February 1, 2005, the Debtors filed their voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code in the Fort Myers Division of the Middle District of Florida. Carefree was not scheduled as a creditor on the Schedule of Liabilities, nor was the non-compete Amended Agreement disclosed in any of the documents filed by the Debtors with the Petition. On July 19, 2005, this Court entered its Discharge Order and its Final Decree and closed the Debtors Chapter 7 Case.

After the Debtors filed their Petition, the Debtor allegedly began engaging in certain business activities in violation of his non-compete Amended Agreement with Carefree. On or about April 22, 2005, Carefree initiated a lawsuit against Metro Lot, and others, in the District Court, Fourth Judicial District, State of Minnesota (Minnesota State Court). Carefree's original Complaint filed on April 22, 2005, named as Defendants Metro Lot Maintenance, Inc., a Minnesota corporation; Robert D. Nichols, individually and d/b/a RDN Lawncare; Ernest P. Miller, individually and d/b/a Florida Sweep. Carefree's original Complaint did not mention the Debtor. On or about September 14, 2005, Carefree filed its Amended Complaint naming all of the original Defendants and added the Debtor, individually and d/b/a Metro Sweep as Defendants.

In Count I of the Amended Complaint, the Plaintiff alleged breach of contract by Metro Lot Maintenance and the Debtor and sought injunctive relief. In Count II of the Amended Complaint, the Plaintiff alleged interference with contract by the by Defendants, Robert D. Nichols and Ernest Miller. In Count III, the Plaintiff alleged interference with contracts or prospective business relationship by all Defendants. In the WHEREFORE clause of the Amended Complaint, the Plaintiff sought compensatory damages against all the Defendants, including the Debtor. The Plaintiff also requested an award of costs and attorney's fees.

In due course, the Debtor filed his Answer to the Amended Complaint admitting and denying certain paragraphs. (*See*

Supplement Affidavit of Scott A. Johnson, Doc. No. 60, Ex. D) (S. Johnson's Supp. Aff'd.). The Answer also contained Affirmative Defenses in which the Debtor contended that by "operation of the bankruptcy" [sic] that Carefree's "claim for damages and injunctive relief are extinguished and barred." *Id.*

On or about September 27, 2005, Carefree filed its Motion for Temporary Injunction in the Minnesota State Court litigation against all of the Defendants named in the Amended Complaint, in addition to the Debtor. On December 21, 2005, the Minnesota State Court entered an Order Denying Temporary Injunction as to the Debtor and Granting Temporary Injunction as to Defendants Ernest Miller and Metro Lot Maintenance, Inc., (both of whom are nondebtors). (*See* S. Johnson's Aff'd., Doc. No. 54, Ex. F).

In its order, the Minnesota State Court held that Carefree failed to establish the criteria required for injunctive relief as to the Debtor and, therefore, denied the temporary injunction. The Court did not discuss the affirmative defense of discharge of the Debtor and apparently proceeded without so, stating that it had jurisdiction over the claims asserted in the Amended Complaint.

The attorneys representing the Debtor in Minnesota on November 7, 2006 and January 11, 2007, respectively, wrote to Carefree's attorney, Mr. Scott W. Swanson, and demanded that Mr. Swanson and his client dismiss the lawsuit filed against the Debtor, and putting them on notice that the State Proceeding was in contempt of the Debtor's Bankruptcy Discharge issued on July 19, 2005. (*See* Affidavit of Todd M. Johnson, Doc. No. 53, Ex's. B and C).

On December 13, 2005, the Debtors filed a Motion to Reopen Chapter 7 Case to Add Creditor (Doc. No. 18). On December 14, 2005, this Court entered its Order Granting Motion to Reopen Case for the limited purpose of allowing the Debtors to file an amendment to their Schedules (Doc. No 19). On December 26, 2005, the Debtors filed their Amendment to Schedule F and included for the first time Carefree Service, Inc., as a creditor holding an unsecured nonpriority claim in the amount of $300,000.00 (Doc. No. 21). On March 23, 2006, the reopened bankruptcy case was again closed.

On April 18, 2006, the Debtors filed a Motion to Reopen Case in Order to File a Motion for Sanctions (Doc. No. 33). On May 26, 2006, this Court entered its Order Granting Debtors' Motion to Reopen Case (Doc. No. 36). On June 14, 2006, the Debtors filed their Motion for Contempt against Creditor and its Counsel for Violating Discharge Injunction (Doc. No. 41). On October 10, 2006, this Court entered its Order on the Motion for Contempt against Creditor and its Counsel for Violating Discharge Injunction (Doc. No. 46). In its Order, this Court noted that the Debtor filed his Response to the Amended Complaint of Carefree asserting his discharge in Bankruptcy, and concluded that the liability placed the matter of the discharge under the jurisdiction of the Minnesota State Court. Accordingly, the Motion for Contempt was denied without prejudice, with leave granted to file the Motion for Sanctions again upon a finding by the Minnesota State Court that the debt to Carefree for breach of the non-compete Agreement was discharged by this Court's Order dated July 19, 2005.

On May 18, 2007, the Debtor and Ernest Miller filed their Motions for Summary Judgment in the Minnesota State Court litigation seeking dismissal of all claims by the Plaintiff against the Debtor and Ernest Miller. On June 27, 2007, the Minnesota State Court granted the Debtor's and

Ernest Miller's Motions for Summary Judgment in all respects. (*See* S. Johnson's Supp. Aff'd., Doc. No. 60, Ex. J). The Court further provided that "each party shall bear their own costs and attorney's fees." (*Id.*, page 1 of Minnesota State Court Order). In the Memorandum accompanying its order, the Minnesota State Court analyzed the claims, including the non-compete Agreement and the tortious interference claims, and concluded first that it had jurisdiction to consider the matter. The Court further concluded that although the Debtor's activities which resulted in a breach of the non-compete Agreement occurred post-petition, the liability for such actions were created pre-petition. Further, the Court concluded that none of the exceptions to discharge are applicable in this instance and "this was a no-asset Chapter 7 bankruptcy, which resulted in a discharge of all pre-petition debts regardless of the scheduling or notification of any creditor." (*See* S. Johnson's Supp. Aff'd., Doc. No. 60, Ex. J, Memorandum pages 5—6). *Citing In re Gardner*, 194 B.R. 576, 580 (Bankr.D.S.C. 1996). *Id.* Based on this, the Minnesota State Court ruled as a matter of law that the claim which arose out of the breach of the "non-competition" restriction was discharged by Jeffery Miller's Chapter 7 Bankruptcy. *Id.*

The foregoing are the relevant facts from the record and the submissions of the parties and, based on the same, the Debtors assert that the Purchase Agreement, including the non-compete clause, was an executory contract that was rejected as a matter of law pursuant to 11 U.S.C. § 365, and that the Debtors' liability for any damages for breach of the non-compete Agreement has been discharged pursuant to 11 U.S.C. § 727. The Debtors further assert that Carefree and its counsel willfully violated the discharge injunction pursuant to 11 U.S.C. § 524(a)(2) with its action asserting claims against the Debtor for damages and injunctive relief and therefore they are entitled to appropriate sanctions including attorney's fees.

In opposition to the claim of the Debtor, counsel for Carefree, rather than challenging the facts relevant to the charge of contempt contend that the Debtors' claims are barred by the doctrine of *res judicata*, collateral estoppel, or the *Rooker–Feldman* doctrine.

## JURISDICTION OF THE BANKRUPTCY COURT

■ Obviously, the threshold question is the jurisdiction of this Court to entertain the Debtors' request to impose sanctions for contempt pursuant to Sections 105 and 524 of the Bankruptcy Code. The challenge of jurisdiction is based on the *Rooker–Feldman* Doctrine which is derived from two United States Supreme Court cases, called *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and the case of *District of Columbia Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In *Rooker*, the Supreme Court held that the district court lacked subject matter jurisdiction over an action in which the plaintiffs sought an order declaring a state court judgment "null and void" on the grounds that it violated the Federal Constitution. In *Feldman*, the Supreme Court appeared to have expanded *Rooker* by holding that lower federal courts lacked jurisdiction over federal constitutional claims which, although not directly passed upon by the state courts, were "inextricably intertwined" in the state court's determination. Federal Courts began to define the *Rooker–Feldman* Doctrine expansively in the 1980s. *See Moccio v. New York State Office of Court Administration*, 95 F.3d 195 (2d Cir.1996). In March 2005,

the Supreme Court limited the application of the *Rooker–Feldman* Doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). In *Exxon* the Court held that:

> The *Rooker–Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state court actions. *Id.* at 284, 125 S.Ct. 1517.

The Court directed federal courts not to dismiss actions for lack of subject matter jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." Id. at 293, 125 S.Ct. 1517. The Court also held that "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that the state court has reached in a case to which he was a party ... then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293, 125 S.Ct. 1517.

In the case of *In re Weinraub*, 361 B.R. 586, 593 n. 5 (Bankr.S.D.Fla.2007), held that the doctrine of *Rooker–Feldman* does not apply in bankruptcy courts, citing *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir.2002) and *Gruntz v. Los Angeles*, 202 F.3d 1074, 1079 (9th Cir.2000). In *Gruntz*, the Ninth Circuit noted two exceptions to the applicability of *Rooker–Feldman* in federal court litigation: first, in habeas corpus litigation and, second, in matters of bankruptcy. The court stated,

> It is well settled that the *Rooker–Feldman* doctrine does not touch the writ of habeas corpus ... Indeed, federal habeas-corpus law turns *Rooker–Feldman* on its head. Rather than leaving state court judgments undisturbed, it provides expressly for federal collateral review of state court judgments ...

So, too, it is with bankruptcy law. In apparent contradiction to the *Rooker–Feldman* theory, bankruptcy courts are empowered to avoid state judgments, see e.g., 11 U.S.C. §§ 544, 547, 548, 549; to modify them, see, e.g., 11 U.S.C. §§ 1129, 1325; and to discharge them, see, e.g. 11 U.S.C. § 727, 1141, 1328. By statute, a post petition state judgment is not binding on the bankruptcy court to establish the amount of the debt for bankruptcy purposes ... Thus, final judgments in state courts are not necessarily preclusive in the United States Bankruptcy Court. Indeed, the rule has long stood that state court judgments entered in a case that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the bankruptcy court. *Gonzales v. Parks*, 830 F.2d 1033, 1036 (9th Cir.1987). *Gruntz*, 202 F.3d at 1079.

The Minnesota State Court Judge, who had concurrent jurisdiction of the question of discharge, ruled on June 27, 2007, that the pre-petition debt of the Debtor is a dischargeable obligation and not within the exception of Section 523(a) of the Bankruptcy Code. The fact that a perfunctory statement in the judgment indicates each "party shall bear their own costs and attorney fees" cannot be construed as a ruling on the Debtor's right to seek contempt of court sanctions against Carefree and their attorneys based on there violations of the discharge injunction entered by this

Court. Moreover, this is not the case when a losing party later on seeks relief in the bankruptcy court and seeks to attack a valid final judgment entered by a court of competent jurisdiction granted before the commencement of the bankruptcy case. The violation of the discharge by Carefree and their attorneys predated the State Court Judgment rendered by the Minnesota State Court.

In the case of *Daigneault v. Eaton Corp.*, 2008 WL 410594, 2008 U.S. Dist. Lexis 10530 (D.Conn. February 12, 2008), the district court held that *Rooker–Feldman* Doctrine did not apply because the injury complained predated a state court judgment. The Court noted that "An injury is only caused by a state court judgment insofar as it is produced by the conclusion of state court proceedings.... An injury is not caused by a state court judgment to the extent that it existed before the state court rendered a judgment...." *Id.*, 2008 WL 410594, *6, 2008 U.S. Dist. Lexis 10530 at *20.

This Court is not unmindful of the cases cited by Carefree, which include *In re Jeffries*, 191 B.R. 861 (Bankr.D.Or.1995) and *Community Bank of Homestead v. Torcise*, 162 F.3d 1084, 1087, (11th Cir. 1998), which cited *Jeffries*. In *Jeffries*, the court held that the bankruptcy court lacked jurisdiction for matters raised in a state court lawsuit because of concurrent jurisdiction between the state court and the bankruptcy court. *Jeffries* has been sharply criticized in the case of *In re Kewanee Boiler Corp.*, 270 B.R. 912, 919 (Bankr.N.D.Ill.2002), where the court undertook a detailed analysis of the decision and held that the logic was unpersuasive and the analysis flawed. The court rejected the suggestion of *Jeffries* that the only remedy the debtor had was to remove the state court action to the bankruptcy court, in addition to the court's holding that the

state court should hear the action rather than bankruptcy court because the debtor chose not to remove the action. The *Community Bank of Homestead* court did not approve *Jeffries*, but merely emphasized the undisputed proposition that state court and bankruptcy courts sometimes have concurrent jurisdiction over issues.

## RES JUDICATA—COLLATERAL ESTOPPEL

■ No elaborated discussion is needed to explain why the doctrine of *res judicata* is inapplicable to the present factual pattern as developed by the Minnesota State Court and before this Court.

■ This leaves for consideration the defense asserted that the doctrine of collateral estoppel bars the Debtor's claim for sanctions against Carefree. Collateral estoppel, which is claim preclusion, is not applicable since no claim was ever asserted by the Debtor for sanctions for violation of the discharge injunction by Carefree. A collateral estoppel, on the other hand, only precludes relitigation of claims which were actually litigated, and not those which might have been litigated. The issue of applicability of collateral estoppel is controlled by local law. In the case of *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993), the court held that "... if the prior judgment was rendered by a state court, then the collateral estoppel of the state must be applied to the judgment's preclusive effect." *See also In re Touchstone*, 149 B.R. 721, 725 (Bankr.S.D.Fla.1993).

■ In the present instance, the state court judgment was rendered in Minnesota. Under Minnesota law, collateral estoppel applies where "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and

fair opportunity to be heard on the adjudicated issue." *Pope County Board of Commissioners v. Pryzmus,* 682 N.W.2d 666, 669 (Minn.App.2004).

■ The issue of actual litigation for the purpose of the application of the doctrine of collateral estoppel was defined by the Eighth Circuit in the case of *Popp Telcom v. American Sharecom, Inc.,* 210 F.3d 928 (8th Cir.2000). The court noted in part that the "universal recognition that collateral estoppel, which is perhaps better understood as issue preclusion, does not apply in a case unless the disputed issue has been actually litigated and decided." *Citing G.A.W. v. D.M.W.,* 596 N.W.2d. 284, 287 (Minn.App.1999).

Nowhere in the record of the state court proceeding was the wrongful conduct by Carefree discussed, briefed or determined by the Minnesota State Court. No counterclaim was filed and no motion was made for sanctions against Carefree. The sole issue briefed before the Minnesota Court was related to the nondischargeability and the application of 11 U.S.C. § 523 for breach of conduct claims brought by Carefree.

This Court is satisfied that the record available here including the matters relevant to the Minnesota State Court litigation permit but one conclusion, that the doctrine of collateral estoppel is not applicable and not a bar to the claim for sanctions under consideration at present.

## EFFECT AND SCOPE OF CHAPTER 7 DISCHARGE

This leads to the ultimate issue concerning the facts relevant to Debtors' claim of contempt and to impose sanctions on Carefree.

■ Under 11 U.S.C. § 524(a)(2), a discharge in a bankruptcy case operates as an injunction against any act to collect any discharged debt as a personal liability of a debtor. 11 U.S.C. § 524 provides in part:

(a) A discharge in a case under thus title:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of a debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ...

(2000). While courts are not in agreement that the violation of the discharge injunction creates a private cause of action, *Walls v. Wells Fargo Bank, N. A.,* 276 F.3d 502 (9th Cir.2002), it is well established that the Court has the power of contempt under 11 U.S.C. § 105(a) to enforce the discharge injunction and sanction violations. *In re Skinner,* 917 F.2d 444 (10th Cir.1990). *See also Matter of Terrebonne Fuel Lube Inc.,* 108 F.3d 609 (5th Cir.1997). A violation of the discharge injunction is "willful" if the creditor knew the discharge injunction was invoked and intended the actions which, in turn, violated the discharge injunction. *Hardy v. I.R.S.,* 97 F.3d 1384 (11th Cir.1996). The test for determining willfulness for violation of the discharge injunction is: (1) whether Carefree and its counsel were aware of the discharge injunction; and (2) whether Carefree and its counsel intended the action which violated the permanent injunction. *Id.* at 1390.

■ The parties do not dispute that Carefree and its counsel first became aware of the Debtors' bankruptcy when counsel filed the Debtor's response to

Carefree's Amended Complaint in the Minnesota State Court action on September 20, 2005, asserting discharge as an affirmative defense, and sent a letter on the same date to Carefree and its counsel demanding that the action for damages against the Debtor be halted. It is also apparent that Carefree continued to pursue its claims against the Debtor after receiving the letters. It should go without saying that in order for a creditor to violate the Bankruptcy Code's discharge injunction, the underlying debt in question must have been discharged. Thus, if the claims being pursued in the State Court against the Debtor were "debts" that had been discharged by the Court's July 19, 2005, Discharge Order, then Carefree's conduct would constitute a willful violation of the discharge injunction. As noted earlier, on December 21, 2005, the Honorable John Q. McShane, the Minnesota State Court Judge, entered an order and memorandum determining that Carefree's claim was a dischargeable debt.

This record leaves no doubt that Carefree and its attorney knew about the Miller bankruptcy in Florida. Specifically, they were put on notice at least as early as September 20, 2005, and November 2, 2005, that any continuation of the Minnesota litigation would be in contempt of Debtors' bankruptcy discharge injunction and subject to sanctions. Thus, continuing pursuit of the Minnesota State Court litigation was a willful act of violation of the discharge injunction.

Because the Minnesota State Court resolved the issue of dischargeability and determined the debt was dischargeable, this Court is entitled to award damages under 11 U.S.C. § 524.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Motion for Contempt Sanctions (Doc. No. 51) be, and the same is hereby granted and this Court is holding Carefree and its attorney in civil contempt for willful violation of the discharge injunction, and they shall be sanctioned in an amount to be determined by a separate hearing after counsel for the Debtors submits in writing a time sheet describing work performed, hourly rate for time spent and expenses incurred in connection with the Minnesota State Court litigation, within ten (10) days of the date of this Order. It is further

ORDERED, ADJUDGED AND DECREED that Debtors' attorney's submission shall be served on Carefree and its attorney and they shall have ten (10) days to challenge any item claims by counsel for the Debtors. It is further

ORDERED, ADJUDGED AND DECREED that a hearing shall be set before the undersigned on _____ 2008, at _____ United States Courthouse, 210 First Street, Room 4–117 Courtroom E, Ft. Myers, Florida.