# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10525

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2015

Lyle W. Cayce
Clerk

In the Matter of:  NINA WHITE-ROBINSON,

Debtor

-----------------------------

MPATANISHI TAYARI GARRETT; TAYARI LAW, P.L.L.C.,

Appellants

v.

COVENTRY II DDR/TRADEMARK MONTGOMERY FARM, L.P.,

Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before Judges JOLLY, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:

Appellants Mpatanishi Tayari Garrett ("Garrett") and her law firm, Tayari Law, P.L.L.C. ("the firm"), appeal the bankruptcy court's contempt order (the "Contempt Order"), which held them in civil contempt for failing to pay sanctions imposed for prior misconduct.  The district court affirmed the Contempt Order.  We likewise AFFIRM.

No. 14-10525

## FACTUAL AND PROCEDURAL BACKGROUND

We have considered this unseemly case once before.  It involves Garrett's misconduct in her legal representation of debtor Nina White-Robinson ("White-Robinson") during bankruptcy proceedings.  We previously affirmed the bankruptcy court's two sanctions orders (the "Sanctions Orders").  First, the bankruptcy court sanctioned Garrett and her firm for discovery abuse, ordering them to pay $5,000 to appellee Coventry II DDR/Trademark Montgomery Farm, L.P. ("DDR").  Second, after a subsequent show-cause hearing, the bankruptcy court sanctioned Garrett for bringing a frivolous and procedurally deficient motion for contempt against DDR, ordering her to pay $20,000 to DDR.  On November 13, 2012, the district court affirmed the Sanctions Orders.  Finally, on January 2, 2014, we likewise affirmed the bankruptcy court's Sanctions Orders with a two-paragraph order, and the Supreme Court denied certiorari on October 6, 2014.  *In re White-Robinson*, 551 F. App'x 121 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 76 (2014).

In the interim, during the appeal of the Sanctions Orders, Garrett and her firm did not pay the ordered sanctions, even though they did not post a supersedeas bond or otherwise obtain a stay pending appeal.  On December 18, 2012, DDR filed a motion for contempt.  The bankruptcy court held a show-cause hearing in which Garrett appeared but did not present any evidence.  On February 21, 2013, the bankruptcy court held Garrett and her firm in civil contempt, finding that they knew about the non-stayed Sanctions Orders but declined to pay them.  The bankruptcy court ordered Garrett and her firm to pay DDR an additional $6,454.50, the expenses DDR incurred in attempting to enforce the Sanctions Orders.  The Contempt Order also ordered them to pay DDR $100 for each additional day that they did not pay the sanctions.

2

No. 14-10525

Over six months later, on September 12, 2013, Garrett and her firm[1] filed an emergency motion for a stay with the district court, moving to stay "essentially all orders," including the Sanctions Orders and Contempt Order. On September 20, 2013, the district court denied Garrett's motion to stay because she had not demonstrated why she failed to obtain a stay from the bankruptcy court. There is no indication in the record that Garrett subsequently filed another motion to stay the Sanctions Orders or the Contempt Order.

Finally, on March 25, 2014 (after we affirmed the Sanctions Orders), the district court affirmed the bankruptcy court's Contempt Order. Garrett has, predictably, appealed again, this time arguing that we should reverse the Contempt Order.

## STANDARD OF REVIEW

"Like the district court," we review "a bankruptcy court's findings of fact for clear error, and its legal conclusions de novo." *In re Bradley*, 588 F.3d 254, 261 (5th Cir. 2009). "A bankruptcy court's assessment of monetary sanctions for contempt is reviewed for abuse of discretion." *Id.*

## DISCUSSION

Garrett raises three main issues on appeal. First, she argues that the bankruptcy court lacked jurisdiction to issue the Contempt Order because it was not related to the bankruptcy and was issued while the Sanctions Orders were before us on appeal. Second, she argues that the Contempt Order violates the prohibition on imprisonment for a debt. Third, she argues that the Contempt Order was an abuse of the bankruptcy court's discretion. We deal with each issue in turn.

---

[1] The remainder of this opinion refers to Garrett and her firm collectively as "Garrett," except where otherwise provided.

3

No. 14-10525

## I. Jurisdiction

A bankruptcy court may issue civil contempt orders. *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 612–13 (5th Cir. 1997). There is no real dispute that the contempt order here was civil, and indeed it clearly was—its purpose was "to coerce compliance with a court order or to compensate another party for the contemnor's violation." *Id.* at 612. That is, the $6,454.50 award was meant to reimburse DDR for having to seek enforcement of the Sanctions Orders, and the $100-per-day award was meant to coerce Garrett into paying the Sanctions Orders timely.

A bankruptcy court may exercise full judicial power only in core proceedings. *In re Wood*, 825 F.2d 90, 91 (5th Cir. 1987); *see also* 28 U.S.C. § 157(b)(1) (giving bankruptcy court full jurisdiction over core matters); *id.* § 157(c)(1) (giving bankruptcy courts only recommendation authority over non-core matters that are merely "related to" a bankruptcy case). We hold that the bankruptcy court's issuance of the Contempt Order took place during such a core proceeding. A proceeding is core if it either arises under the Bankruptcy Code or "would have no existence outside of the bankruptcy" proceeding. *Wood*, 825 F.2d at 96–97. Here, the proceeding was core because holding a party in civil contempt for refusing to follow a bankruptcy court's valid and binding orders "would have no existence outside of the bankruptcy" proceeding. Again, an order of civil contempt is meant to coerce the contemnor into compliance or provide a remedy for the party injured by noncompliance. *Terrebonne Fuel*, 108 F.3d at 612. As such, an order of civil contempt is considered part of the underlying case. *See In re Hipp, Inc.*, 895 F.2d 1503, 1517 (5th Cir. 1990) ("[C]ivil contempts generally have been viewed as part of the underlying case."). Thus, the civil contempt order was issued as part of the bankruptcy case itself, making it a core proceeding that "would have no existence outside of the bankruptcy."

4

No. 14-10525

Moreover, the Contempt Order here falls within one of the statutorily-enumerated examples of core proceedings because it was a "matter[ ] concerning the administration of the estate."   28 U.S.C. § 157(b)(2).   The Contempt Order concerned the orderly administration of White-Robinson's estate—namely, her attorney's compliance with federal bankruptcy rules and the orders of the bankruptcy court. *See In re Memorial Estates, Inc.*, 950 F.2d 1364, 1370 (7th Cir. 1991) (holding that sanction for attorney's misconduct during bankruptcy case was core proceeding, without considering whether misconduct occurred during core proceeding, in part because misconduct itself "concern[ed] the administration of the estate" (internal alteration in original)); *Jackson v. Wessel*, 118 B.R. 243, 248 (E.D. Pa. 1990) (holding that malpractice claims against debtor's counsel alleging "professional conduct not compatible with obligations imposed by provisions of the bankruptcy law itself—provisions relating to the conduct of practitioners before the bankruptcy court—" concerned "the administration of the estate"). We find unpersuasive Garrett's claim that the Contempt Order was non-core and unrelated to the bankruptcy case merely because White-Robinson had been discharged from bankruptcy. The bankruptcy court issued its Sanctions Orders to help promote the proper administration of the estate, and therefore the later Contempt Order to enforce the Sanctions Orders still "concern[ed] the administration of the estate."[2]

In the alternative, Garrett argues that the bankruptcy court could not issue its Contempt Order while the Sanctions Orders were being appealed to this court. This argument is clearly foreclosed by our precedent. Unless a bankruptcy court's ruling is stayed pending appeal, that court retains

---

[2] Rather than discussing whether the Contempt Order was issued during core proceedings, Garrett primarily argues that the Contempt Order was not "related to" White-Robinson's bankruptcy.   We do not reach this argument because, once a proceeding is determined to be core, we need not consider whether it is also "related to" a bankruptcy case. *Stern v. Marshall*, 131 S. Ct. 2594, 2605 (2011).

jurisdiction to engage in proceedings to enforce its own rulings. *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir. 1987). Here, Garrett did not obtain a stay of the Sanctions Orders pending appeal. Accordingly, the bankruptcy court retained jurisdiction to enforce the Sanctions Orders through any appropriate means, including a civil contempt order. *See Resolution Trust Corp. v. Smith*, 53 F.3d 72, 76–77 (5th Cir. 1995) ("Until the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions." (internal quotation marks and alteration omitted)).

## II. Imprisonment for a Debt

Garrett next argues that the Contempt Order was improper because it violates 28 U.S.C. § 2007 ("§ 2007"), the federal prohibition on imprisonment for a debt. That section provides in relevant part that "[a] person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished." *Id.* § 2007(a). The Sanctions Orders were issued from a federal court in Texas, and the Texas Constitution provides that "[n]o person shall ever be imprisoned for debt." Tex. Const. art. I, § 18. Thus, because the Contempt Order allegedly threatens Garrett with imprisonment for her failure to pay the Sanctions Orders, Garrett argues that the Contempt Order violates § 2007.

The most intuitive response to this argument is that the Contempt Order did not imprison anyone and did not realistically threaten anyone with the risk of imprisonment. But Garrett argues that one of our cases could be read to imply that, in Texas, § 2007 prohibits *all* civil contempt orders for failure to pay a debt because imprisonment is a possible remedy for civil contempt. In *Pierce v. Vision Investments, Inc.*, we applied § 2007 analysis to a civil contempt order, even though the order did not imprison the contemnor. 779 F.2d 302, 306–10 (5th Cir. 1986). Ultimately, we decided that the civil contempt order was issued for the violation of an equitable decree rather than failure to pay a

debt, so § 2007 was not violated. *Id.* at 309. But we did not explicitly decide whether § 2007 could ever be violated by a civil contempt order that does not impose imprisonment. *See id.*[3]

We start by assuming, without deciding, that sanctions of the sort imposed here are "debts" within the meaning of the term as used in § 2007 and the Texas Constitution.[4] Having made this assumption, we start and end our analysis of Garrett's argument with the plain text of § 2007. That section prohibits only *imprisonment* for a debt—not fining for a debt, not sanctioning for a debt, and not holding in contempt for a debt. We hold that, given the plain statutory language and the lack of any binding precedent, only imprisonment for a debt could possibly violate § 2007. Thus, a civil contempt order that does *not* impose imprisonment cannot violate § 2007, regardless of whether it is imposed for nonpayment of a debt. Here, Garrett was not imprisoned, so § 2007 does not apply.

Garrett essentially argues that a civil contempt order always implicitly threatens imprisonment. But DDR's motion for contempt requested only

---

[3] *Pierce* was decided on panel rehearing. *Id.* The panel's original, vacated opinion explicitly decided that a civil contempt order for failure to pay a debt was precluded by § 2007 in Texas, even if the contempt order did not require imprisonment. *Pierce v. Vision Invs., Inc.*, 765 F.2d 539, 545 (5th Cir. 1985), *vacated on rehearing by* 779 F.2d 302 (5th Cir. 1986). Needless to say, this statement in the original opinion is not good law because the opinion was vacated. It is troubling that Garrett repeatedly relies upon the vacated *Pierce* opinion.

[4] As we have indicated above, we do not decide whether the Sanctions Orders, imposed for an attorney's misconduct during litigation, created mere "debts" within the meaning of § 2007 or Texas law. We have been unable to find any Texas or federal cases that directly consider this question. *Cf. Pierce*, 779 F.2d at 309 ("Nothing in Texas jurisprudence indicates that a Texas court would find that the court order in this case was a mere debt."). Similarly, we do not decide whether Texas law allows imprisonment of someone who has the financial resources to pay a debt but refuses to do so, although we note that the Texas Courts of Appeals are apparently split on this issue. *Compare Ex parte Buller*, 834 S.W.2d 622, 626 (Tex. App.—Beaumont 1992) (holding that Texas's "constitutional prohibition" against imprisonment for debts "simply does not apply unless the contemner demonstrates inability to pay" (internal quotation marks omitted)), *with In re Byrom*, 316 S.W.3d 787, 795 n.6 (Tex. App.—Tyler 2010) (noting *Buller* holding with disapproval).

7

monetary sanctions, not imprisonment. And, during the contempt hearing, the bankruptcy court and DDR repeatedly disclaimed any intention to imprison Garrett or anyone else for failure to pay the amounts due under the Sanctions Orders. We find Garrett's contention that she was "threatened" with imprisonment disingenuous.[5]

## III. Abuse of Discretion

The remainder of Garrett's arguments can be disposed of easily. She makes essentially five points, none of which is extensively briefed. First, she argues that less harsh remedies were available and the fines imposed were excessive. We review only for abuse of discretion, and we hold that the bankruptcy court did not abuse its discretion. There was ample, uncontested evidence that the Sanctions Orders were in effect and that Garrett knew of them and did not pay them. Fining Garrett for DDR's rather limited expenses of $6,454.50 was eminently reasonable and not at all excessive or overly harsh. Further, given Garrett's apparent obduracy in refusing to pay the sanctions, imposing an additional fine of $100 per day of nonpayment was reasonably calculated to coerce compliance and was not excessive or overly harsh.

Second, Garrett argues that she was denied due process and equal protection because she did not receive a fair hearing. But she was given the opportunity to appear, object to documentary evidence, and put on evidence of her own.[6] When the bankruptcy court told Garrett that "it's your

---

[5] That said, in the seemingly not-unlikely situation that Garrett violates the Contempt Order, imprisonment would be appropriate only if it would also be appropriate for nonpayment of the Sanctions Orders. That is, assuming arguendo that imprisonment for nonpayment of the Sanctions Orders would be forbidden by § 2007, imprisoning Garrett for violation of the Contempt Order would be tantamount to imprisoning her for failure to pay a debt. Otherwise, imprisonment for a debt could always be accomplished by first obtaining a contempt order and then requesting imprisonment for failure to comply with it.

[6] The firm alone argues in the reply brief that it was not given proper notice of the contempt hearing. Because this argument is cursorily raised for the first time in the reply

opportunity . . . to put on evidence at this time," she responded simply, "I have nothing further to say to this Court." Indeed, reading the contempt hearing transcript leaves the distinct impression that Garrett essentially refused to participate in the proceeding after the bankruptcy court rejected her jurisdictional and § 2007 objections. Garrett cannot now complain that she was not given the opportunity to present evidence or to present her case.

Garrett also complains that the bankruptcy court violated her due process rights by not considering whether she was financially able to pay the Sanctions Orders. But she never even raised an inability-to-pay defense, let alone satisfied her burden of production for that defense. *See, e.g., United States v. Rylander*, 460 U.S. 757, 757 (1983) (noting that alleged contemnor who "*rais[es] th[e] defense*" of present inability to comply with the violated order bears the burden of production (emphasis added)); *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions *is a defense* to a charge of civil contempt. The alleged contemnor bears the burden of producing evidence of his inability to comply." (emphasis added) (internal citations omitted)). Again, Garrett was given every opportunity to present this defense. Indeed, the bankruptcy judge specifically informed Garrett that "I would be willing to hear anything about your financial resources. I would be willing to hear whatever reasons you care to offer about why you didn't pay the money judgment. So I am asking you one more time: Do you want to say anything on any of these points?" Garrett responded with arguments unrelated to financial inability to pay the sanctions. And, again,

---

brief, we do not consider it. *See United States v. Myers*, 772 F.3d 213, 218 (5th Cir. 2014) ("We generally do not consider arguments made for the first time in a reply brief and deem those arguments waived.").

when the bankruptcy court asked her whether she would present any evidence, she declined to do so.

Garrett suggests that, given the amount of time that has elapsed since the Contempt Order, she now owes over $100,000, so we should vacate the Contempt Order and remand for consideration of financial inability to pay. This we will not do. Garrett did not obtain (or even vigorously pursue) a stay of the contempt order pending appeal, so she is to blame for any accrued balance.[7]

Third, Garrett argues that the Contempt Order was void for vagueness because it would "lead the reader to believe the orders at issue were more than monetary judgments to a creditor." Given her lack of legal citations, we are not sure why she believes that the alleged vagueness of a few factual findings would render an entire order void. Regardless, we hold that the Contempt Order was not vague and indeed correctly stated that Garrett had not complied with the Sanctions Orders.

Fourth, Garrett argues that the district court made a number of unsupported findings. We do not defer to the district court's findings in this bankruptcy appeal, so any such error is harmless on appeal. *See Terrebonne Fuel*, 108 F.3d at 613 ("Although the bankruptcy appellate process makes this court the second level of review, we perform the identical function as the district court.").

Fifth, Garrett alone argues that the bankruptcy court improperly held her jointly and severally liable for actions she performed as a member of her law firm, which is allegedly a limited liability company ("LLC") organized under Texas law. But Texas law only protects LLC members from being held

---

[7] Of course, if another civil contempt proceeding is brought against Garrett to enforce the Sanctions Orders and Contempt Order, she will have the opportunity to defend based on her "*present* inability to comply with the order[s] in question." *Rylander*, 460 U.S. at 757.

10

liable for the *LLC's* obligations, not their own obligations.  *See* Tex. Bus. Orgs. Code § 101.114 ("[A] member . . . is not liable for a debt, obligation, or liability *of a limited liability company . . . .*" (emphasis added)).  Garrett was found in civil contempt for her failure to pay sanctions that she owed because of her own misconduct in prior bankruptcy proceedings.  Accordingly, she is not protected by her alleged membership in her LLC.  *See id.*; *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008) (holding that LLC member could be held individually liable for "his *own* allegedly tortious or fraudulent actions").

## CONCLUSION

For the foregoing reasons, we AFFIRM the bankruptcy court's Contempt Order.

11